## LOMBARD v. COLUMBIA NAT. LIFE INS. CO.

No. 3033.   Decided October 4, 1917.   (168 Pac. 269.)

1.   APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE. If a life policy was not in force at the time of the death of insured, no subsequent delivery could give it any validity, and the exclusion of any correspondence had between the insurer and insured's agent, with reference to the whereabouts of the policy, subsequent to such date, could not be prejudicial error.   (Page 558.)

2.   APPEAL AND ERROR—EXCLUSION OF EVIDENCE—HARMLESS ERROR. In an action on a life policy, delivery of which was denied, exclusion of letters between the insurance company and insured's agent, which would have established nothing more than a request to it to refund the premium, and a failure of the company so to do, could not prejudice defendant company.   (Page 559.)

3.   INSURANCE—DELIVERY—SUFFICIENCY.   Where the premium was paid on the date of the application, and a receipt issued, stating that if the policy was subsequently issued, it should be in force from that date, the issuing of the policy and sending it to the company's general agent, who in turn sent it to the agent, who took the application, but who had severed his relations with the company, constituted delivery, although the policy was never received by insured. (Page 560.)

4.   WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIANS.   That insured was afflicted with and died of cancer, and that, after physicians had told him that the disease was incurable, insured wept and voluntarily stated that he had been suffering with his stomach and pains in his back for two years, could not be proved by the testimony of insured's attending physician, in view of Comp. Laws 1907, sec-

tion 3414, as amended by Laws 1911, c. 109, providing that a "physician or surgeon cannot without the consent of his patient be examined in a civil action, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." '(Page 561.)

5. INSURANCE—CAUSE OF DEATH—PROOF—SUFFICIENCY. That, after insured's physician had advised him that his condition was serious, and his disease incurable, the insured voluntarily stated that he had been suffering with his stomach and pains in his back, would not, standing alone, prove or tend to prove that insured died of cancer, or prove the nature of the disease that caused his death. (Page 563.)

Appeal from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by John F. Lombard against the Columbia National Life Insurance Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Williams & Williams* for appellant.

*George McCormick* and *A. E. Pratt* for respondent.

### APPELLANT'S POINTS

"It is impossible to lay down any inflexible rule by which it can be determined what evidence shall be sufficient to establish agency in any given case. That is a question which must be determined in view of the facts in each particular case. Whatever form of proof is relied upon, however, must have a tendency to prove agency, and must be sufficient in probative force to establish it by a preponderance of the evidence. It may be said in general terms, however, that whatever evidence has a tendency to prove the agency is admissible, even though it be not full and satisfactory, as it is the province of the jury to pass upon it. So if evidence has first been introduced tending to prove the agency or to make out a prima facie case thereof, the admissions and declarations of the alleged agent, if otherwise competent, may then be shown, and the whole case be passed upon by the jury." (Mechem Agency, 2nd Ed., Vol. 1, Sec. 299. See also *McCormick* v. *Queen of Sheba Mining Co.,* 23 Utah 71.)

The various questions propounded by the defendant to Dr. Worrell, objected to and objection sustained by the Court, it will be found, are based upon the simple fact that the relation of physician and patient existed between the witness and the deceased. The appellant insists that the showing of that fact alone was not enough to justify the rulings of the trial court in sustaining any of the objections made, and clearly not as to communications offered to be shown by the witness, made to him voluntarily by the deceased, and wholly independent of the ascertainment by the doctor of any facts or statements relating to the ailment of the deceased, and not in any way necessary to enable the doctor to prescribe or act for his patient. (Wigmore, Evidence, Vol. 4, p. 3347 et sec.)

### RESPONDENT'S POINTS

Actual manual delivery is not essential to a legal delivery. So held with respect to deeds as well as policies. It is a matter of intention. (14 R. C. L. 898, Sec. 76; 16 Am. & Eng. Enc. of Law 855; *Bowen* v. *Prudential Ins. Co.* [Mich.] 51 L. R. A. N. S. 587; *Yonge* v. *Equitable Life Ass'n*, 30 Fed. 902; *Neff* v. *Metropolitan Life Ins. Co.*, 73 N. E. 1044; *Dibble* v. *Northern Assurance Co.*, 14 A. S. R. 470; *Kentucky Mut. Ins. Co.* v. *Jenks*, 5 Ind. 96; *Phoenix Assurance Co.* v. *McArthur*, 67 A. S. R. 154; *N. Y. Life Ins. Co.* v. *Babcock*, 69 A. S. R. 134. See also Notes to 138 A. S. R. 47, 51.)

The defendant did all it could to deliver the policy into the actual possession of Joseph L. Lombard. There was a purpose and intention to deliver, conclusively shown by the testimony of defendant's witnesses, Brown, Dickerson and Girard. The receipt for the premium showed an intent to treat the acceptance of the risk and retention of the premium and issuance of the policy as a delivery.

GIDEON, J.

The plaintiff brings this action to recover from defendant the amount of an insurance policy issued upon the life of plaintiff's brother, Joseph Lombard.

It appears from the record that on the 5th day of December, 1914, at Firth, Idaho, the deceased made application to the defendant for a life insurance policy. After answering the questions contained in such application and passing the physical examination required, the insured paid one C. F. Girard, soliciting agent, the first or annual premium of $83.78, and received from such soliciting agent a receipt signed by the secretary of the defendant for that amount. Among other things the receipt contained the following:

"Such insurance to be in force from the date of this receipt provided the application therefor be approved by the company at its home office in Boston and a policy issued on the plan applied for, the company reserving the right to disapprove, reject or postpone such application, and unless the policy is actually issued incurring no liability hereunder except for the return of any moneys paid hereon if the application be not accepted."

The application was forwarded to the home office of the defendant, and was received in the latter part of January, 1915. The defendant, within a week or so after the receipt of the application, issued two policies to the insured, one health and one life, and the same were dated December 5, 1914, that being the date of the application. The life policy was numbered 48252, and that is the only policy in question here. The two policies were then forwarded by the secretary of the company to F. W. Dickerson, its general agent for the state of Idaho, located at Pocatello in such state, with directions not to deliver the life policy until released by telegram. On February 12th the policies were returned to the home office by such general agent, with the request that the accident and health policy be changed so as to rate the insured as a sheep owner instead of a sheep herder. The policies were returned to Mr. Dickerson on February 18th, and on Feb. 27th the defendant company wired him that the life policy might be delivered. In the meantime the soliciting agent, Girard, who resided at McCammon, Idaho, had severed his connection with the defendant, but the general agent, knowing that Girard was personally acquainted with the insured, sent the policy

to him. Girard received the same by regular mail, and, as stated by him, he made some effort to find the insured by inquiring of persons who knew him (the insured), and held the policy for several months. Finally, in September, 1915, at the request of the general agent, Girard returned the policy to him. Immediately on receipt of the policy, on the same day, Dickerson returned it to the home office, and the same policy was, on September 20th, returned from the home office to the general agent in Idaho with instructions to send the same to Largilliere Company, bankers, at Soda Springs, Idaho. It further appears that the insured died on August 14, 1915, at Ogden, Utah.

The defendant in its answer, denies the delivery of the policy, and alleges affirmatively that the deceased made false statements in his application for the insurance.

Trial was had before the court and a jury. At the close of the testimony the court instructed the jury peremptorily to return a verdict in favor of plaintiff for the full amount of the policy. From that judgment this appeal is taken.

The errors assigned are presented under two general heads, namely: (1) The exclusion of certain testimony and of letters received by the defendant and defendant's general agent, Mr. Dickerson, from Largilliere Company, bankers, of Soda Springs, Idaho, and the answers to such letters; (2) the exclusion of the testimony of the physician who attended the insured during his last sickness.

The correspondence excluded was offered to show an agency of Largilliere Company of the insured during his lifetime and after his death that Largilliere Company was the agent of plaintiff. It may be conceded as a self-evident proposition that if the policy was not in force August 14, 1915, the date of the death of the insured, no subsequent delivery could give it any validity. If it was not binding upon the defendant at that date, no act subsequently done could make it binding. The physical whereabouts of the policy is therefore immaterial, and whatever means taken by the plaintiff, or his agent, to get the actual physical possession of the policy after that date could in no way create any lia-

bility on the part of the defendant. The policy was from that date only mere evidence. The exclusion, therefore, of any correspondence had between Largilliere Company and defendant after August 14, 1915, could not be prejudicial error.

The only communication or correspondence had between such bankers and the company prior to August 14, 1915, was a letter written to the defendant on March 4,        2 1915, which letter is as follows:

"On Dec. 4th, 1914, John Lombard of Firth, Idaho, paid to Geo. F. Girard who represented himself to be your agent, $75.40 as a first premium, on a $2,500 life policy. Dec. 5th his brother Jos. Lombard paid Mr. Girard $83.78 in full for a $2,500.

"The receipts are made out on your blanks signed Wm. H. Brown, Secy. These gentlemen have heard nothing from you or Girard since paying in the money. They have left the receipts with us and would very much like to have their money refunded. Please advise us how this can be done."

The defendant replied to that letter under date of March 11, 1915, and concerning this policy said:

"Replying to your favor of March 4th, I find that policy No. 48252 was issued on February 8th to Joseph Lombard, under date of December 5th, and sent to our branch office. The premium on this policy was $83.78. * * * We are writing today to Mr. Dickerson, our general agent at Pocatello, asking him to follow up this case and ascertain what has become of policy No. 48252. * * * He will give this prompt attention and within a short time the matter will be straightened out. The agent who took the application is no longer in our employ and this accounts for the delay."

Both of these communications were excluded under objection that no agency had been shown on the part of Largilliere Company. Whether this correspondence would prove, or tend to prove, an agency or not, we cannot see how the defendant is prejudiced by its exclusion. In the communication of March 4th it is stated that nothing had been heard from the agent receiving the money, and that the receipts had been left with Largilliere Company, and that company informed

defendant that Lombard would like to have his money re-
funded. The secretary, in his reply, does not offer to return
the premium, makes no statement that as soon as the where-
abouts of the policy is ascertained the money will be refunded,
but simply advises that he has written the general agent, and
that the matter will be straightened up within a short time.
So far as the record shows, the defendant made no effort at
that time, or any subsequent time, to repay or refund the
money which its agent had received as the first or annual
premium on the policy. Had those two exhibits been admitted
in evidence, the only fact that could have been established
thereby would have been the request on the part of Largilliere
Company for a refund of the money, and the failure on the
part of the defendant to comply with that request. That
could not prejudice the defendant.

It is also contended that, under the admitted facts as above
outlined, there was never any delivery of the policy. The
premium was paid on the date of the application; a receipt
given stating that if the policy was subsequently issued
it should be in force from that date; the policy was        3
issued and sent to the general agent and by him sent
to Mr. Girard, who had been, but was not then, connected
with the defendant, and retained by him for several months.
Mr. Girard, it appears, was a friend and acquaintance of the
insured, and made inquiries and an effort to locate the insured,
but the insured's business kept him away from his home and
out on the range with his flocks. Afterwards the policy was
returned to the general agent and by him to the home office,
and then no effort was made to retain or cancel it.

"It is the intention of the parties and not the manual possession of
the policy which determines what constitutes delivery. Whatever the
parties may have agreed to as a delivery, or whatever their conduct
shows to have been considered a delivery, controls." Note to *Hartford
Fire Ins. Co.* v. *Whitman* (Ohio), 9 Ann. Cas. 225.

In *Unterharnscheidt* v. *Missouri State L. Ins. Co.*, 160 Iowa,
223, 138 N. W. 459, 45 L. R. A. (N. S.) 743, it is said:

"It is next argued that the delivery of the policy to the company's
agent is not a delivery to the insured person. It is quite obvious that
this may or may not be true according to the circumstances under which

the policy is placed in the agent's hands. If the premium is paid when the application is presented, and such application is approved and policy executed as of that date, and nothing remains but to deliver the paper to the insured, it may well be held that the sending of it to the agent to be by him given over to such insured person constitutes a sufficient delivery in law. To say the least, the neglect or omission of the agent under such circumstances to perform the manual act of placing the policy in the hands of the insured will not serve to suspend or postpone the obligation of the company upon its contract. In other words, delivery in law is not necessarily manual delivery."

See, also, note, 138 Am. St. Rep. 50.

Under the facts disclosed and the authorities, we are clearly of the opinion that it was the intention of the parties that the policy should be delivered and in force.

We have next to consider the contention that the district court erred in the exclusion of the testimony of the attending physician. The objection to the testimony of this witness was made under the provisions of Comp. Laws   4 1907, section 3414, as amended by chapter 109, Laws Utah 1911, the fourth subdivision of which is as follows:

"A physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Defendant attempted to prove by the physician the condition of the insured at the date he first attended him, and also asked the direct question whether the insured was at that time afflicted with cancer; also as to whether he had operated upon the deceased during the time he was under the care of the witness. Objection to that line of testimony was sustained by the court, at which time the defendant's counsel stated that:

He "proposes to prove by this witness—will prove by this witness, if permitted—that the deceased died of cancer of the stomach and liver; that after he [witness] had ascertained that fact he thought it was due to the afflicted man to tell him of the serious condition and that he was incurable; and that after he [witness] had communicated this information to him, the patient, realizing his condition, wept and then voluntarily told this physician, without any

further inquiry upon his part, that he [insured] had been sick for two years suffering with his stomach and pains in his back. And this testimony, if permitted, would show that this was wholly voluntary, unsought for, and communicated by the party of his own free will and in connection with his realization of his incurable condition.''

This offer to prove was objected to and, the objection being sustained, the ruling is assigned as error.

It is urged that the information which the insured gave to the attending physician was not privileged, as it was not ''necessary to enable him to prescribe or act for the patient.'' Under the above statute, the question as to how or when the physician acquired the information sought to be proved is immaterial. If it was any information acquired while attending the patient which was necessary to enable the physician to prescribe or to act for the patient, then, under the statute, it would be privileged. The facts proposed to be proven, as shown by the offer made by defendant's counsel, are that the deceased died of cancer of the stomach and the liver. That, after the physician had ascertained the fact of the disease, he considered it due the afflicted man to tell him of the seriousness of his condition and that it was incurable, and that after that the deceased wept and then voluntarily told the physician, without any further inquiry, that he had been sick for two years suffering with his stomach and pains in his back. Under the authorities the question of the admissibility or inadmissibility of the foregoing proposed testimony, under statutes similar to ours, is not easily determined. This court has determined in common with many other authorities, that not all communications made to the attending physician are excluded under the provisions of the statute. *Madsen* v. *Light & Ry. Co.*, 36 Utah, 528, 105 Pac. 799. The fact that the deceased was afflicted with cancer could only become known to the physician while attending the patient, and was, of course, necessary to enable him to prescribe for him. The knowledge that the patient died of that disease would also be a matter the physician would ascertain from his treatment of the patient. Clearly such facts would be privileged as being information acquired while attending the patient.

The further fact proposed to be proven by the physician that, after he had advised the insured that his condition was serious and his disease incurable, the insured thereupon voluntarily stated that he had been suffering with his stomach and pains in his back for two years, would not, standing alone, without other aid or explanation, prove or tend to prove that the insured died of cancer, or prove the nature of the disease that caused the insured's death. There is no proof or offer of proof in the record, except the proof proposed to be given by the physician, that the insured had cancer, or that that disease caused his death, or of the nature of the disease or sickness that did cause his demise.

In addition, it must, we think, be accepted as a fact, universally recognized by not only the medical profession but by every one, that a physician, in attending or prescribing for a patient, of necessity ought to know and does know, and does ascertain for that purpose from his patient, the duration of the disease, which, of necessity, must aid him in determining the nature of the treatment to be given, the patient's strength or ability to undergo surgical operations or take other severe treatment, and the likelihood of such treatment proving beneficial or proving fatal, as it did in this case. Such would seem to be accepted as ·a matter of common everyday knowledge, and, as such, recognized and enforced by the courts. The fact as to whether the disease to be treated is chronic or acute—in other words, its duration—surely is a part of the information that every physician would want to know and would need to know in the intelligent discharge of his duties, to enable him to prescribe for and treat his patient. Whether the physician acquired the information, as above stated, from voluntary statements of the patient, or whether it was acquired from investigation or inquiry on his part, it would, nevertheless, be included within the information privileged under the section of the statute set out.

It follows from the above conclusion that there was no prejudicial error in the rulings of the court, and that the

judgment should be affirmed, respondent to recover costs. Such is the order.

McCARTY, CORFMAN, and THURMAN, JJ., concur.

FRICK, C. J.

I concur in the result. If, however, the conclusion of Mr. Justice GIDEON is based on the receipt which he has copied, alone, I cannot concur in the reasons stated by him. The defendant, in its answer, affirmatively averred: (1) That the policy sued on was not delivered at any time; and (2) that it was not delivered while the deceased was in sound health, as provided in the application of insurance which is made a part of the policy, and both of which the plaintiff produced in evidence at the trial. Upon the second question the defendant averred that the application, which was made a part of the policy, contained the following provision:

"I certify that all the statements and answers appearing herein and in Part II hereof are full, complete, and true, and agree that the insurance hereby applied for shall not take effect until the issuance and delivery of the policy and the payment of the first premium thereon while I am in sound health."

There is neither claim, pleading, nor proof on the part of the plaintiff that the foregoing provision was waived by the defendant, nor, as I understand counsel, is it contended that the receipt superseded the provision contained in the application which I have quoted. Indeed, plaintiff's counsel, in their brief, state the questions involved here thus:

"In our view, therefore, there are but two material questions of law involved in this appeal: (1) Was the policy in question delivered in February, 1915? (2) Was the information obtained by Dr. Worrell, while acting as the physician of the insured, privileged, and his testimony properly excluded, under the section and subdivision referred to?"

There can be no doubt that such a provision in the application, and especially if made a part of the policy, is valid and binding on both parties to the contract. 25 Cyc. 725, and

cases there cited. Nor is there any doubt that such a provision may be waived by the company. Same vol., p. 730. It is also settled beyond dispute that the contents of the application and of the policy, if the application is made a part of the policy, constitute the contract of insurance. The contents of other papers may, however, be required to be considered in connection with the application and policy, if they were considered by the parties and are referred to in the policy or the application. Under such circumstances, all that is contained in all of the papers upon a particular subject must therefore be considered in determining the rights of the parties. If the receipt set forth in the opinion of Mr. Justice GIDEON is considered, it must be considered in connection with what is said in the application and policy with respect to how and when the insurance shall become effective, and neither party may rely solely on what may be contained in one of those papers. If that were not so, the insurer might impose additional conditions in the receipt upon the insured, which might defeat the insurance. When, therefore, there is a provision in the application which is made a part of the policy, as in this case, or in the policy and it is not averred that the provision has been waived or superseded, then the receipt, if any is issued, must be considered in connection with the contents of the application and of the policy. In this case, therefore, I think the defendant had a right to insist that the policy did not become effective for two reasons: (a) Because it was not delivered to the insured; and (b) for the reason that, if it was delivered to him, he was not in sound health at such time, as provided in the application. And I think that the defendant has a right to have the judgment of this court upon both of those propositions. In my judgment, however, the evidence is sufficient to justify the conclusion that the policy was intended to be, and in fact was, delivered within the purview of the law; and I am further of the opinion that the evidence is insufficient to justify a finding that the deceased was not in sound health when the delivery of the policy was made, as just stated. Those two

propositions must therefore be determined against the contention of the defendant.

Whether the district court erred in not permitting the doctor to testify on behalf of the defendant for the reasons stated in the opinion of Mr. Justice GIDEON I am in doubt. The question, under our decisions, is a very close one. In view, however, that my associates are of the opinion that the ruling of the district court upon that question was right, I defer to their judgment.

For the reasons stated, therefore, I concur in the affirmance of the judgment.