491 P.2d 227

Joan B. MOORE, Plaintiff and Resopndent,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

No. 12388.

Supreme Court of Utah.
Nov. 24, 1971.

Thomas M. Burton, of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendant and appellant.

Raymond M. Berry, of Worsley, Snow & Christensen, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff, Joan Moore, sued Prudential Insurance Company to recover as beneficiary on a life insurance policy of $12,000 covering the death of her former husband, Douglas G. Ridd. Prudential sought to avoid the policy obligation, claiming that there had been no acceptance of the policy by the insured, and that it had been obtained by misrepresentations in the application. A jury found for the plaintiff. Prudential appeals.

In 1967 Prudential's agent, Edward L. Foster, came to plaintiff's home in Salt Lake City and solicited her then husband, Douglas G. Ridd, to reinstate a previously existing policy and to apply for another life policy, to which he agreed. An application was filled out, including examination by a Dr. August L. Jung, employed by Prudential, and the first premium was paid. Pursuant to the application, Prudential issued the new life policy, stated by its terms to be effective July 13, 1967, and mailed the policy to the agent Mr. Foster in Salt Lake City for delivery to Mr. Ridd. However, it did not arrive until July 21, so Mr. Foster decided not to deliver it until after the July 24 holiday, Utah Pioneer Day, weekend.

On July 22 Mr. Ridd was vacationing with his family at Bear Lake. At about seven o'clock that evening he suffered a heart attack. He was taken to the hospital at Montpelier, Idaho, where he died at eleven o'clock that night. On the death certificate the attending physician, Dr. Reed Rich, listed the cause of death as coronary thrombosis.

About three months after Ridd's death, Prudential informed Mrs. Ridd that it would not make payment under the policy.

In its attempt to avoid liability on the ground that the policy was not accepted by the deceased, defendant relies on a provision therein that the insurance shall not take effect unless:

> \* \* \* accepted by the proposed insured \* \* \* during the proposed insured's lifetime \* \* \*.

The application for and the issuance of an insurance policy is a matter of contract and is governed by the rules thereof. When a party (the applicant) has given and done all he agreed to do which will benefit the other party (the Company), that constitutes his consideration for the contract. This condition was fulfilled by completing and submitting the application, and paying the premium to the Company; and this was certainly sufficient indication of his willingness to accept the policy to assure that there was no doubt about that fact. When the Company had received the premium, approved the application, and issued the policy, that would seem to be sufficient acceptance on its part to indicate a meeting of the minds on the contract and thus commit the insurance as of July 13,

1967, as stated in the policy.[1] This having been done and the policy delivered to the agent, whether the latter retained it on his own desk over the weekend, or delivered it to Mr. Ridd, would seem to have no relationship to what the company was to receive for the insurance coverage. In fact, there would be nothing unnatural or unfair in indulging the assumption that the deceased should be able to rely upon the agent, Mr. Foster, to whom he was looking to handle his insurance business, to receive the policy for him to hold until it could be delivered.[2]

It is further to be observed that in addition to the provision relied upon by the defendant, the same paragraph specified other conditions and states:

> * * * and in accordance with and subject to the terms and conditions of *the policy, shall be deemed to have taken effect as of the policy date stated in the policy* * * *. [Emphasis added.]

This provision further emphasizes that it was not unreasonable to conclude that the policy was effective on the date it expressly stated: July 13, 1967. The Company having so fashioned the policy and issued it, if there is uncertainty or duplicity in its terms, it should be construed in favor of the insured. We are in agreement with the view which harmonizes with the verdict of the jury and the judgment of the trial court: that under the circumstances shown here, the defendant should not be permitted to use the lack of physical delivery of the policy over a weekend, a fact which seems quite unrelated to any part of the consideration it was to receive for the policy, to avoid the obligation it had undertaken as of the date stated in the policy.

The other ground upon which defendant Prudential seeks to avoid liability under the policy: that of misrepresentations in the application, relates to answers given in connection with the physical examination by Dr. August L. Jung, employed by Prudential. Using Prudential's standard physical application form, the doctor asked Mr. Ridd a list of questions concerning his condition of health and medical history. Those pertinent here are:

5. Have you ever been treated by any physician or other practitioner for or had known indication of:

    b) nervous or mental disorder, paralysis, or severe or frequent headaches?

    c) epilepsy, convulsions, dizzy spells, or loss of consciousness?

6. Have you ever been treated by any physician or other practitioner for or had any know indication of any disease or disorder of any of the

---

1. See Krause v. Washington National Insurance Co., Or., 468 P.2d 513, 517.

2. See Lombard v. Columbia National Life Insurance Co., 50 Utah 554, 168 P. 269.

following not discussed in the answers to Question 5:

c) brain or nervous system?

\*　　\*　　\*　　\*　　\*　　\*

9. Other than as disclosed in the answers to Questions 5 through 8, have you, within the past 5 years, ever consulted or been attended by or been examined or had a checkup by any physician or other practitioner?

10. Do you have any known indication of any physical disorder, deformity, defect or abnormality not disclosed in the answers to Questions 5 through 9?

\*　　\*　　\*　　\*　　\*　　\*

14. What are the full particulars with respect to each and every part of Questions 4 through 13 to which the answer is "Yes"?

Dr. Jung checked all of the above questions as having been answered in the negative except No. 9 relating to medical attention during the previous five years, which was answered yes. In answer to No. 14, the further explanation of the affirmative answer to No. 9, the doctor recorded that the applicant had stated that earlier in 1967 he had gone to a Dr. Robert E. Jones who had found him to be in good health.

The omissions and incorrect statements claimed by defendant with respect to the answers just related are two: The first is that about three years earlier Mr. Ridd had gone to a Dr. Warren Hughes and had told him about attacks of momentary loss of muscle control. Dr. Hughes diagnosed this as resulting from hyperventilation. But it can be fairly inferred that he did not regard this as anything serious because he did not order any restraint or limitation in Mr. Ridd's conduct; and he prescribed no medicine.

The second is that in reporting a visit to Dr. Robert E. Jones about two months prior to defendant's insurance solicitation, he said that Dr. Jones had found him to be in good health; whereas defendant asserts the fact to be that in connection with that examination, and based upon Mr. Ridd's medical history, Dr. Jones had diagnosed the above-mentioned condition as one known as "cataplexy." This is a comparatively rare condition for which there is no known medical explanation. Dr. Jones likewise did not suggest any restraint or limitation on Mr. Ridd's activities. However, he did prescribe a nerve medicine which could be taken as a palliative.

The defendant's contention is that plaintiff's recovery on the policy is barred because of the provisions of Sec. 31–19–8, U.C.A.1953:

Representations in applications.—(1) All statements and descriptions in any application for an insurance policy \* \* \* shall be deemed to be representations and

not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) fraudulent; or

(b) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) the insurer in good faith either would not have issued the policy or contract, * * * or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer * * *.

The trial court submitted the case to the jury under instructions which incorporated the requirements of the just-quoted statute, indicating that it would be a defense if the insured made either a misrepresentation, or an omission, or a concealment of fact, or an incorrect statement in his application which was either fraudulent, or material to the acceptance of the risk of insuring the life of the insured, or that the Company in good faith would not have issued the policy insuring the life of the insured if the true facts had been made known to it.

Under such instructions the jury found for the plaintiff.

■■ The defendant projects the proposition that because its Medical Director, Dr. Albert H. Domm, testified that if the Company had known about the cataplexy, it would not have issued the policy, and there is no direct testimony to the contrary, the jury's finding cannot stand. As to this, these observations are pertinent: first, the defendant seems to overlook the fact that the Company having issued the policy, had the burden of proving the stated defense;[3] and second, it is the jury's exclusive prerogative to judge the credibility of the evidence and to find the facts. Dr. Domm's assertion that the Company would not have issued the policy if it had known about the cataplexy relates to a matter of post-mortem conjecture concerning which it is easy enough to now declaim in its own favor, and difficult if not impossible for the plaintiff to directly refute. This testimony was suffused with self-interest; and it was not mandatory for the jury to find in accordance therewith.[4]

In the recent case of Burnham v. Bankers Life & Casualty Co.,[5] we dealt with a comparable problem. In speaking about whether a misstatement in an insurance

---

3. Ocean Accident & Guaranty Corp. v. Rubin, 9 Cir., 73 F.2d 157, 44 Am.Jur. 2d 892.

4. See Jensen v. Logan City, 96 Utah 522, 88 P.2d 459; Gagos v. Industrial Comm. of Utah, 87 Utah 101, 48 P.2d 449; and Page v. F. Security Ins. Co., 8 Utah 2d 226, 332 P.2d 666.

**436**

application was material to the risk, we declared that it does not depend upon assertions of the insurer, or of the insured, as to what they may think about the materiality of the representation in controversy. It was pointed out that is a question for the jury to determine as to what "those engaged in the insurance business, acting reasonably and naturally in accordance with the usual practice among insurance companies * * * would have done had they known the truth * * *."[6] It is our opinion that in a situation such as existed here, where reasonable minds might differ, the trial court followed the correct procedure in submitting the matter under proper instructions to a jury for determination.

Upon a survey of the record in accordance with the traditional rule of review favoring the verdict, there appears to be a reasonable basis in the evidence and the fair inferences to be drawn therefrom upon which the jury could refuse to believe that the defendant had established its defenses by a preponderance of the evidence. Consequently it has failed to show any basis for reversing the judgment.

Affirmed. Costs to plaintiff (respondent).

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

5. 24 Utah 2d 277, 470 P.2d 261.

6. Ibid. at p. 281, 470 P.2d at p. 263.