Elaine AHO, Plaintiff and Appellant,

v.

UNITED TRANSPORTATION UNION INSURANCE OF CLEVELAND, OHIO, an Insurance Corporation, and Tony Oneida, Defendants and Respondents.

No. 14902.

Supreme Court of Utah.

Nov. 3, 1977.

---

Mark S. Miner, Salt Lake City, for appellant.

John L. Black, of Roberts, Black & Dibble, Salt Lake City, for respondents.

ELLETT, Chief Justice:

Jerry May died November 2, 1974. He had been insured with the defendant insurance company for many years under a $5,000 twenty-pay life plan insurance policy payable to his wife as beneficiary. His wife had died, and he was contemplating marriage with the plaintiff. He canceled the old policy and on September 19, 1974, made application for a new life insurance policy to become effective November 1, 1974, naming Elaine Aho, the plaintiff herein, as the principal beneficiary. This application was referred to as No. 509 and provided that the defendant company would incur no liability until the policy was issued to the applicant and the first premium was paid. No binding receipt was issued and no payment was made at the time. The application also stated that a physical examination would be required of the applicant before a policy would be issued.

The physical examination was made on September 20, 1974, and the results were reported forthwith to the defendant company. The Chief Medical Director for the company desired further information; therefore, a letter dated October 4, 1974, was sent to Mr. May requesting the names and addresses of all doctors who had treated him during the past ten years. The letter also contained the following paragraph:

Your request to cancel your present BLF&E policy effective October 1, 1974 and to have the cash value of this policy forwarded to you will leave you without *any* life insurance for the month of October since you do not desire your new 509 plan of insurance to become effective until November 1, 1974. Also, in all fairness to you, we must point out the *possibility* which exists with every application that is received; which is that such application may have to be rejected. If this should happen, then you not only will be left with no life insurance for the month of October, but you will be left without any life insurance at all. Of course, the thorough investigation which our Chief Medical Director intends to do upon receipt of the names and addresses of the doctors which we have requested you to furnish may permit us to approve your 509 application. However, we are only trying to warn you what may happen if it is necessary to take *adverse* action on your 509 application.

The names and addresses of the doctors were sent by Mr. May as requested but the reports were not immediately made. One report was received by the company on November 4, 1974, and one doctor wrote that he would require a fee of $10 before he would submit an answer regarding Mr. May. This request was received by the company on November 20, 1974. Due to the incompleted research required by the Chief Medical Director, no insurance policy was ever issued to Mr. May. Upon learning of his death which occurred November 2, 1974, the company ceased its considerations as to whether or not to accept the application for a policy.

Since no policy was ever issued, the company refused to make any payment to plaintiff and this lawsuit resulted. At the end of the production of evidence, the trial court granted the motion of the defendant company for a directed verdict and this appeal is from that order.

The plaintiff here relies upon the case of *Prince v. Western Empire Life Insurance Company.*[1] That case, however, differs from this one in that there was a binding receipt given and a premium paid at the time the application was made. There, the applicant believed that he was covered and as a result canceled other life insurance policies which he owned. In the instant matter, the applicant did not make a premium payment nor did he have the binding agreement signed which was attached to the application. He had no reason to believe he would be covered by insurance any time prior to actual receipt of the policy. Any misconception he possibly could have had would have been dispelled by the letter sent him under date of October 4, 1974, wherein he was specifically told that if he canceled his old policy, he would be without insurance until the new policy was issued.

The plaintiff contends that the premiums were paid by way of withholding from the deceased's paycheck. True it is that the premiums withheld prior to October 1, 1974, amounted to $30.70 per month; and thereafter, at the direction of the local agent for the defendant company, the sum of $34.20 was withheld. Still, that does not show that the premium withheld was for the anticipated policy. The premium on the contemplated new policy would have been $17.19 while the premium for the old twenty-pay plan was only $14.40 per month. The $30.70 paycheck deduction consisted of the following items:

| | |
|---|---|
| Union dues | $10.50 |
| Welfare | 1.00 |
| Old policy (life) | 14.40 |
| Old policy (accident) | 4.80 |
| | |
| TOTAL DEDUCTION | $30.70 |

Defendant's agent who gave directions to the employer of Mr. May never knew that Mr. May had ordered a cancellation of the twenty-pay life policy; therefore, he did not request the employer to stop the $14.40 deduction on that policy.

At the time of applying for the new life policy, Mr. May also took out an accident policy which required no physical examina-

1. 19 Utah 2d 174, 428 P.2d 163 (1967).

tion and which became effective on October 1, 1974. The monthly premium on this policy was $3.50 which, when added to the prior deduction of $30.70, increases the sum withheld to $34.20, the amount of the deduction for October. When it was learned that the deductions for the old policy had been made after its cancellation, the amounts withheld were returned to the heir of Mr. May, together with the payments made on the accident policy.

While there was a credit due Mr. May of $14.40 per month for the amounts withheld on the canceled policy, there was never a payment of $17.19 per month made on the anticipated policy, either by cash or by deduction.

We think the court ruled correctly in holding that Mr. May was not insured under the No. 509 application and that Elaine Aho was not entitled to recover on her complaint.

The judgment is affirmed. No costs are awarded.

WILKINS, J., concurs.

HALL, J., concurs in the main opinion and also in the concurring opinion of CROCKETT, J.

CROCKETT, Justice (concurring with comments).

Concurring:

■ I note my agreement with the proposition relied upon by the plaintiff: that if an applicant for insurance has done everything required of him, including payment of the premium, or arranging credit for its payment, for insurance to begin on a day certain, then the insurance should be effective from the stated date; and this should be so notwithstanding a proviso that the insurance will not be in effect until approval by the company's home office, or other such condition. The premium pays for insurance from the stated date; and if the company can avoid any liability that occurs before it approves the policy, (or other condition is fulfilled), it is exacting payment for a period for which it gives no coverage.

For that reason it has been correctly and justly held that if liability occurs after the promised date of coverage, the company cannot arbitrarily refuse approval and thus avoid liability, but can refuse approval only if it is made to appear that there was some good cause which would have justified its refusal to approve the policy, if the liability had not occurred. See *Long v. United Benefit Life Insurance*, 29 Utah 2d 204, 507 P.2d 375 (1973); *Prince v. Western Empire Life Insurance*, 19 Utah 2d 174, 428 P.2d 163 (1967); *Moore v. Prudential Insurance*, 26 Utah 2d 430, 491 P.2d 227 (1971); *Parker v. California State Life*, 85 Utah 595, 40 P.2d 175 (1935).

In this case, however, according to the figures as set forth in the main opinion, even though it appears that if the deceased had lived arrangements would have been made to pay the premium on the new policy, that had not been accomplished and, therefore, the conditions prerequisite to insurance coverage had not been fulfilled.

MAUGHAN, J., concurs in the concurring opinion of CROCKETT, J.