**Mavis WILLIAMS, Plaintiff and Appellant,**

v.

**FIRST COLONY LIFE INSURANCE COMPANY, Allen Meikle, Kenneth A. Bischoff and Lowell D. Smith, Defendants and Respondents.**

No. 15934.

Supreme Court of Utah.

March 22, 1979.

John P. Ashton of Prince, Yeates & Geldzahler, Salt Lake City, for plaintiff and appellant.

Robert M. McDonald of Jones, Waldo, Holbrook & McDonough, Richard W. Campbell of Olmstead, Stine & Campbell, Salt Lake City, John T. Caine of Richards, Caine & Richards, Ogden, for defendants and respondents.

CROCKETT, Chief Justice:

Plaintiff Mavis Williams seeks to recover $15,000.00 as the beneficiary of an insurance policy which was projected to be issued by the defendant First Colony Life Insurance Company on the life of her husband. On the basis of facts shown in the pleadings, documents, affidavits and depositions (the submissions), the district court granted defendant's motion for summary judgment on the ground that the insurance had never

taken effect because the deceased had not complied with the plainly stated prerequisite condition of taking a medical examination prior to his death.

About January 1976, the plaintiff, who was employed at Hill Air Force Base, requested one Allen Meikle, a friend who also worked there and was also a licensed insurance agent and broker, to attempt to obtain life insurance coverage for her 60 year old husband, Dean Williams. Mr. Williams, who had a history of high blood pressure, had previously had insurance, on a rated up basis, with Occidental Life Insurance Company for whom Mr. Meikle was an agent.

Pursuant to Mrs. Williams' request, Mr. Meikle engaged in efforts to locate an insurance company willing to insure her husband. Mr. Meikle asked another insurance agent, one Kenneth Bischoff, for his assistance and provided him with information concerning Mr. Williams. After that information had been sent to various insurance companies, the defendant First Colony notified Mr. Bischoff, on February 18, 1976, that it would be willing to provide insurance on Mr. Williams on certain conditions, and provided the forms necessary to process the application. According to Mr. Bischoff's deposition, he then met with Mr. Meikle and informed him of "the requirements that Mr. Williams would have to take care of before the policy would be in force."

On the evening of April 13, 1976, Mr. Meikle took the application to the Williams' home in Ogden. It is without dispute that he discussed with Mr. and Mrs. Williams the various aspects of the proposed insurance: the amount of coverage, the premium to be charged, and including the fact that defendant First Colony required Mr. Williams to submit to a medical examination. In his affidavit, Mr. Meikle avers that in their discussion it was stated so plainly that there could be no "misunderstanding on the necessity of the physical examination" and that the application for insurance "was submitted to Mr. Williams subject to a physical examination." Awareness of this requirement is acknowledged by Mrs. Williams in her deposition as quoted below.

Both plaintiff and her husband signed the application and the plaintiff gave Mr. Meikle a $65.88 check for the payment of the first premium. He gave her a "conditional receipt," the contents of which are set forth below, and left the medical examination form with Mr. Williams with directions that he take it to a Dr. Alford.

The completed portion of the application and the premium check was sent to the defendant and Mr. Williams was scheduled for a physical examination on April 20, 1976. However, he died of a cardiovascular ailment the day before the scheduled exam. Neither Mrs. Williams nor Mr. Meikle gave defendant First Colony notice of Mr. Williams' death. But when the company later learned of his death, it tendered a refund for the amount of the premium that had been paid. The plaintiff refused the tender of the money and brought this action.

The pertinent language of the conditional receipt which was given to the plaintiff states:

Unless the conditions specified in Paragraph "FIRST" are fulfilled exactly, *no insurance will become effective prior to policy delivery.* Neither the agent nor the medical examiner is authorized to waive these conditions.

It recited that payment of $65.88 was received in connection with the application. Then, in bold face letters, the following appears:

FIRST. CONDITIONS PRECEDENT UNDER WHICH INSURANCE MAY BECOME EFFECTIVE PRIOR TO POLICY DELIVERY.

*If the following conditions shall have been fulfilled exactly:*

(a) *All medical examinations, tests, x-rays, and electrocardiograms required by published Company rules must be completed.*

\* \* \* \* \* \*

*then insurance as provided* by the terms and conditions of the policy . . . *will become effective on the latest of the following dates:* (a) the date of Part I of this application; (b) the date of Part I of

the application for any Companion Policy, if applicable; (c) *the date of completion of all medical examinations,* tests, x-rays, and electrocardiograms *required by published Company rules;* and (d) the Date of Issue, if any, requested in the application.

Plaintiff argues: (1), that the conditional receipt is ambiguous because it does not clearly state when the policy coverage was to become effective; and (2), that the defendant did not discharge its duty of calling the limiting conditions expressly to her attention. She therefore urges that the facts surrounding the solicitation of the policy and representations made by Mr. Meikle to her and her husband should be examined into and that she is entitled to have a jury pass upon the issue as to what the parties intended and whether Mr. Williams was insured by the defendant when he died.

In response thereto, the defendant points to the clarity of the conditions as stated, and to statements in plaintiff's deposition about the meeting on the evening of April 13th between Mr. Meikle, herself and her husband:

Q. Okay. What was your understanding of the purpose of the check?

A. That was the first premium. $65.88 was the amount of the check.

Q. Okay. Is there anything else that you can remember that was talked about regarding the effectiveness of this policy or anything that you or your husband would be required to do regarding this policy, other than to make your payments to keep it in effect as you understood?

A. My husband to meet with the doctor for a physical, which we was assured was a routine matter.

Q. A routine matter. Now what do you mean by that?

A. Mr. Meikle said they had all his medical records so that this was just a routine process.

Q. Mr. Meikle said it was routine. What is your understanding of that word 'routine' in this sense, that it was insignificant?

A. No. *It was just filling a requirement.*

Defendant's position is that it thus appears that the plaintiff's own testimony is in agreement with the clear language of the receipt, and also with Mr. Meikle's unrefuted averments, that the plaintiff and her deceased husband were made aware that Mr. Williams would have to take a medical examination as a prerequisite to the issuance of and coverage under an insurance policy.

In regard to this controversy, it is appropriate to make certain observations. The documents executed in connection with the application for insurance are governed by the rules applicable to the construction and enforcement of contracts in general.[1] We recognize the soundness of plaintiff's assertion that if there is any uncertainty or ambiguity in the terms, they should be construed strictly against the company, who fashioned the documents, and in favor of the insured.[2] But the converse of this is also true, that in determining the intent of a contract the language of the instrument itself should first be looked to, and unless there is some ambiguity or uncertainty, there is no justification for attempting to vary it by extrinsic or parol evidence.[3]

Our decision herein is made in awareness of the practical advantages, both to an insurance company and its customers, that under ordinary circumstances, an insurer should be able to commit insurance as being in effect during the interim period

1. *Moore v. Prudential Ins. Co.,* 26 Utah 2d 430, 491 P.2d 227 (1971); *Roscoe v. Bankers Life Ins. Co.,* 22 Ariz.App. 282, 526 P.2d 1080 (1974).

2. *Moore v. Prudential Ins. Co.,* supra, note 1; *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 440 P.2d 944 (1968).

3. *Continental Bank & Trust Co. v. Bybee,* 6 Utah 2d 98, 306 P.2d 773 (1957); *Ephraim Theatre Co. v. Hawk,* 7 Utah 2d 163, 321 P.2d 221 (1958).

between the date of the application and when it is later accepted or rejected.[4] Concomitantly, it is unfair for an insurer to collect a premium which purports to cover a period when in fact no such coverage exists: i. e., between the time of the application and the delivery of the policy. For this reason, we have approved the rule that ordinarily, when the insured has done everything required of him and paid his premium, the insurance takes effect from the time of the issuance of a binding receipt, even though the policy has not been delivered.[5] This is especially so when death or injury occurs from some cause unrelated to any possible ground for rejecting the application.

The difficulty which exists in cases such as the instant one is that prudence requires that an insurance company collect a premium as earnest money before it incurs the expenses of paying for a medical examination and processing the application and, if the company cannot impose such conditions as was done here, the result will be that persons such as Mr. Williams, who have special problems of age and health, would have to go through a very difficult process of obtaining insurance, if it could be done at all.

By the same measure of justice which decrees that it is unfair for an insurer to charge premiums which purport to cover a period when in fact no such coverage exists, the insurer should be accorded the protection of the plainly stated provisions of its contract as to the conditions prerequisite to its providing insurance coverage. In harmony with this, we have quoted with approval the proposition that:

. . . if, at the time of the application or medical examination, the insured was an insurable risk, the temporary contract of insurance is in force. *If, however, the applicant at the time of the application or the medical examination was not an insurable risk, the company will not be liable under the 'binding receipt.'* The rationale behind this holding is simply that the language of the receipt clearly expresses the intention of the parties.[6]

[All emphasis in this opinion is added.]

The view which we consider to be consistent with justice in the instant situation is that, inasmuch as Mr. Williams had a known health hazard, it was prudent, reasonable and permissible for the defendant company to impose such conditions as was done here; and further, that inasmuch as the conditions were clearly stated, they became part of the contract, so that insurance coverage would not begin until those conditions were met.[7]

Reverting to apply what has been said above to the particular facts of this case: it is indisputably plain that the concerned parties were fully aware that Mr. Williams could not obtain insurance on a regular basis. It is difficult to see how it could be more clearly stated that the defendant company would insure him only subject to the condition that he would have to take a medical examination; and that no insurance coverage would exist until that had been accomplished.

Because of our agreement with the view of the trial court that the terms of the conditional receipt given plaintiff were clear and unambiguous and thus not subject to change or modification by parol evidence,

4. For a discussion of the purpose of so-called "binding receipts" and how courts have interpreted them, see *Prince v. Western Empire Life Ins. Co.,* 19 Utah 2d 174, 428 P.2d 163 (1967); *Long v. United Benefit Life Ins. Co.,* 29 Utah 2d 204, 507 P.2d 375 (1973).

5. See e. g., *Moore v. Prudential Ins. Co.,* supra, note 1; *Prince v. Western Empire Life Ins. Co.,* supra, note 4. See also concurring opinion in *Aho v. United Transportation Union Ins.,* Utah, 571 P.2d 1329 (1977).

6. 29 Am.Jur.2d, Insurance, sec. 210, quoted in *Prince v. Western Empire Life Ins. Co.,* supra, note 4.

7. See *Roscoe v. Bankers Life Ins. Co.,* supra, note 1, where it was held that when a physical examination and a physician's medical questionnaire was required under the terms of the receipt the application was not completed and coverage did not arise until the applicant furnished those items to the insurance company.

it is unnecessary to be concerned with the issue as to whether, and to what extent, Mr. Meikle was the agent of defendant First Colony, and what may or may not have been said between him and the Williamses inconsistent with the terms of the conditional receipt.

It is indeed unfortunate that Mr. Williams died prior to taking the scheduled physical examination. Nevertheless, we are impelled to the conclusion that under facts which appear without dispute, there is no basis upon which any liability for that misfortune can justly be imposed upon the defendant insurance company.

Affirmed. Costs to defendant.

MAUGHAN, WILKINS and HALL, JJ., concur.

STEWART, J., having disqualified himself, does not participate herein.