2007 UT App 87

David C. TERRY, Petitioner,

v.

RETIREMENT BOARD, PUBLIC EMPLOYEES' HEALTH PROGRAM, Respondent.

No. 20060019–CA.

Court of Appeals of Utah.

March 15, 2007.

Daniel F. Bertch and York Major, Bertch Robson, Salt Lake City, for Petitioner.

David B. Hansen and Liza J. Eves, Howard Phillips & Andersen, Salt Lake City, for Respondent.

Before BENCH, P.J., DAVIS and McHUGH, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 David C. Terry (Petitioner) challenges the Utah State Retirement Board's (the Board) decision upholding the denial of benefits claimed under a Public Employees' Health Program (PEHP) life insurance policy. The alleged policy is in the name of Petitioner's deceased mother (the Decedent) and Petitioner is the primary beneficiary. The record as a whole supports the Board's determination that no insurance contract existed between PEHP and the Decedent. Though Petitioner has presented an insurance policy certificate (the Certificate), PEHP has shown that the Decedent was not eligible to receive the type of insurance coverage from PEHP that the Certificate purports to evidence and that no premiums were ever paid on the alleged policy. Also, because Petitioner has not proved the facts of his case with sufficient certainty, nor shown any reliance on the Certificate or any resulting harm, Petitioner cannot assert the principle of equitable estoppel against PEHP, a governmental entity. Finally, the Board followed statutory procedures in deciding Petitioner's claim, and did not deny Petitioner due process. We therefore affirm.

## BACKGROUND

¶ 2 PEHP offers life insurance to certain qualified public employees. PEHP cannot sell life insurance policies to individuals and can only provide life insurance for Utah State employees whose employers have selected PEHP life insurance coverage. The Decedent worked as a Nutrition Technician in the Salt Lake City School District from 1970 until 1979, when she retired. The Certificate states that the policy amount is $18,000, that it is provided as a benefit to early retirees of the state of Utah, and that it was issued in 1998.

¶ 3 The Decedent allegedly showed the Certificate to Petitioner and told him that he would be the primary beneficiary of the policy. Prior to the alleged receipt of the Certificate, the Decedent had made some inter vivos gifts to Petitioner's sister and wanted to ensure that Petitioner would receive an equal share in the Decedent's estate. Following the Decedent's death in 2003, Petitioner presented the Certificate to PEHP in an effort to collect on the policy. PEHP denied payment on multiple grounds, and Petitioner requested a hearing before an Administrative Hearing Officer (the Hearing Officer).

¶ 4 At the hearing, PEHP officials testified that the Decedent's employment with the Salt Lake City School District did not qualify her for the type of term life insurance cover-

age specified on the Certificate. The record also reflects that no premiums were paid on the policy by the Decedent or by anyone else on her behalf and that PEHP did not uncover any evidence of the alleged policy in their internal records. Petitioner testified that he received a larger part of the Decedent's estate than his sister and that everything between them was equal. He also could not attribute any action, forbearance of action, or resulting harm to his belief in the validity of the Certificate. The Hearing Officer ruled that no life insurance contract was formed and that estoppel did not apply because Petitioner failed to show reliance or harm.

¶ 5 The Board conducted a statutorily mandated review of the Hearing Officer's order denying Petitioner's claim and adopted the Hearing Officer's decision. Language in the Board's written order outlines the procedure for petitioners to request reconsideration by the Board, and explains that petitioners are not required to request reconsideration before seeking judicial review. Petitioner filed for judicial review of the Board's decision without requesting the Board to reconsider.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Our decision as to the level of deference we should afford the administrative agency's decision has been made difficult by Petitioner's failure to properly characterize his claims in terms of Utah Code section 63–46b–16(4), which outlines the various considerations for granting judicial relief from state agency decisions. *See* Utah Code Ann. § 63–46b–16(4) (2004). The subsections therein require reviewing courts to apply different standards of review, depending on what petitioners claim. We therefore "strongly encourage [future] counsel to clearly identify under what section review is being sought and to make certain they identify the appropriate standard of review under that section." *King v. Industrial Comm'n*, 850 P.2d 1281, 1286 n. 6 (Utah Ct.App.1993); *see also* Utah Code Ann. § 63–46b–16(4).

■ ¶ 7 Petitioner challenges the Board's conclusion that an insurance contract did not exist between the Decedent and PEHP. "Whether a contract has been formed is ultimately a conclusion of law." *In re Estate of Flake*, 2003 UT 17, ¶ 27, 71 P.3d 589 (quotations and citation omitted). Challenges to an agency's legal conclusions of general law best fall under Utah Code section 63–46b–16(4)(d), which allows an appellate court to grant relief when an agency has "erroneously interpreted or applied the law." Utah Code Ann. § 63–46b–16(4)(d). We review an agency's legal conclusions for correctness, giving no deference to the agency's decision. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997).

■ ¶ 8 Petitioner's equitable estoppel claim presents a mixed question, which "involves the application of law to fact." *State v. Hamilton*, 2003 UT 22, ¶ 33 n. 12, 70 P.3d 111 (quotations and citations omitted). The estoppel claim also falls under Utah Code section 63–46b–16(4)(d) because it challenges the agency's application of the law. *See* Utah Code Ann. § 63–46b–16(4)(d). There are factors, including policy concerns, an agency's expertise in a specific area of law, and the complexity of the given legal question, which may alter the amount of deference an appellate court gives an agency's decision when reviewing mixed questions of law and fact. *See Drake*, 939 P.2d at 181 (applying the general "mixed question" standard of review to judicial review of agency decisions). Depending on the circumstances, an appellate court may review the agency decision with a level of deference "falling anywhere between a review for 'correctness' and a broad 'abuse of discretion' standard." *Id.* Here, Petitioner has not directly challenged the Board's underlying factual determinations on which the Board's estoppel conclusions are based and estoppel does not present a legal question within the special purview of the Board. Therefore, "we review the underlying empirical facts under a deferential clear error standard," but "no deference need be given [the Board's] resolution of such questions of law." *Id.*

■ ¶ 9 Finally, Petitioner contends that the Board denied him due process of law by not granting him a sufficient review prior to taking initial action on the Hearing Officer's decision. This claim is properly made under

Utah Code section 63–46b–16(4)(e), which allows appellate courts to grant relief when "the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure." Utah Code Ann. § 63–46b–16(4)(e). "Questions regarding whether an administrative agency afforded a petitioner due process in its hearings are questions of law," which we review for correctness. *Sierra Club v. Utah Solid & Hazardous Waste Control Bd.*, 964 P.2d 335, 347 (Utah Ct.App.1998).

## ANALYSIS

### I. Contract Claim

■ ¶ 10 Petitioner argues that the Board incorrectly concluded that no valid insurance contract existed between the Decedent and PEHP. Specifically, he claims that the Certificate alone is sufficient proof of a contract for purposes of proving PEHP breached the contract by refusing to pay. "The application for and the issuance of an insurance policy is a matter of contract and is governed by the rules thereof." *Moore v. Prudential Ins. Co.*, 26 Utah 2d 430, 491 P.2d 227, 228 (1971). To establish a breach of contract claim, a complainant must first show that a contract exists. *See Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388. The Utah Supreme Court has held that in a dispute over the existence of an insurance contract, offer, acceptance, and consideration are shown by the submission of an application by the applicant, approval by the insurance company, and the subsequent payment of premiums. *See Moore*, 491 P.2d at 228. In a proceeding before a hearing officer or the Board, the moving party bears the burden of proof. *See* Utah Code Ann. § 49–11–613(4) (Supp.2006). Petitioner was therefore required to prove the existence of the contract and ultimately that PEHP breached the contract.

■ ¶ 11 Petitioner urges us to accept the Certificate as conclusive proof of a contract between PEHP and the Decedent. While the Certificate is evidence of a contract, in this case the following facts effectively rebut the Certificate as proof of a valid contract: the Decedent was ineligible to receive this type of life insurance from PEHP; the Decedent received the Certificate almost twenty years after she retired, despite the policy being of a type for early retirees that expires within five years after the individual's retirement; and nothing in PEHP's records showed the existence of the policy. We agree with the decision of the Board that, given this evidence and testimony, Petitioner has not met his burden of proof with respect to the formation of a contract.

¶ 12 Similarly, even if the Certificate amounts to some evidence of consideration, it does not conclusively establish that element of a contract in this case. "In a contract action in this state, consideration or a legally sufficient substitute for consideration must be established as part of the [petitioner's] prima facie case." *DeMentas v. Estate of Tallas*, 764 P.2d 628, 632 (Utah Ct.App.1988). Here, Petitioner offered no other evidence that premiums were paid and PEHP officials testified that PEHP has no record of the payment of any premiums on the policy. In this case, where the record establishes that no premiums were paid on the alleged policy, the Board correctly concluded that the Certificate alone is insufficient evidence of consideration.

¶ 13 We agree with the Board's conclusion that no contract existed between the Decedent and PEHP. Because we hold that there is no valid contract, we decline to address the parties' arguments about mutual or unilateral mistake.

### II. Equitable Estoppel

■ ¶ 14 Petitioner argues that the Board erred by upholding the Hearing Officer's decision that PEHP should not be equitably estopped from denying the existence of the policy after issuing the Certificate. "As a general rule, estoppel may not be invoked against a governmental entity." *Anderson v. Public Serv. Comm'n*, 839 P.2d 822, 827 (Utah 1992). Utah law provides a limited exception to this rule in "unusual circumstances where it is plain that the interests of justice so require." *Id.* (quotations and citations omitted). This exception applies "only if 'the facts may be found with such certainty, and the injustice suffered is of sufficient

gravity, to invoke the exception.' " *Id.* (quoting *Utah State Univ. of Agric. & Applied Sci. v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982)).

¶ 15 Here, Petitioner's case does present some unusual circumstances in that he is in possession of a seemingly valid insurance certificate in the Decedent's name. However, the Certificate evidences coverage for which the Decedent was not qualified. Further, Petitioner testified that he would have to split any payout with his sister because they have been treated equally in the distribution of the Decedent's estate. The Decedent's alleged reason for naming Petitioner the beneficiary, to ensure that he would receive an equal share of the Decedent's estate in light of the previous gifts to Petitioner's sister, has been satisfied. A party seeking to estop the government must prove the facts of his case with certainty, *see id.,* and Petitioner has failed to do so. Also, Petitioner has not proved that he suffered a grave injustice that warrants invoking equitable estoppel. *See id.* We therefore uphold the Board's decision because Petitioner failed to meet the high standard of proof necessary for applying equitable estoppel against the government.

¶ 16 Because we hold that the Board did not err in refusing to apply equitable estoppel against PEHP based on the principle that estoppel is generally not to be used against governmental entities, we need not fully discuss the merits of Petitioner's estoppel claim. We note, however, that Petitioner has conceded that he did not rely on PEHP's issuance of the Certificate. Such a concession destroys any chance Petitioner's estoppel claim would have had of prevailing on the merits because "reasonable action or inaction by the [claimant] taken on the basis of the first party's statement" is one of three necessary elements Petitioner must prove to invoke estoppel. *Holland v. Career Serv. Review Bd.,* 856 P.2d 678, 682 (Utah Ct.App. 1993).[1]

### III. Due Process

¶ 17 Petitioner argues that the Board denied him due process by failing to grant Petitioner a review hearing, claiming that he had a statutory right to a hearing prior to the Board taking initial action on the Hearing Officer's decision. Petitioner claims that the Board's initial ruling, having been made only six days after the Hearing Officer's decision, violated language present in both the Hearing Officer's and the Board's decisions, stating that Petitioner would have ten days to request reconsideration by the Board. Petitioner misunderstands how that language relates to the statutory scheme. Under Utah Code section 49–11–613(3), "[t]he [B]oard shall review and approve or deny all decisions of the hearing officer in accordance with rules adopted by the [B]oard." Utah Code Ann. § 49–11–613(3) (2002). The legislature's use of the word "shall" makes the Board's initial review mandatory, and the statute grants the Board the authority to adopt its own rules governing the review. *See id.* Section 49–11–613(5) allows petitioners to apply for reconsideration by the Board, after its initial action, based on any one of several grounds. *See id.* § 613(5).

¶ 18 Here, the Board's decision of which Petitioner complains was the initial mandatory review, and the language contained therein concerning the ten-day time frame referred to Petitioner's window of opportunity to apply for the optional board reconsideration available in subsection 613(5). Petitioner did not file for reconsideration within ten days of the Board's decision and, accordingly, the Board did not review the Hearing Officer's decision in light of Petitioner's specific objections thereto. The Board complied with the statutory scheme and its own internal rules in issuing the decision against Petitioner, and Petitioner was not denied due process.

---

1. Petitioner alternatively claims that the Decedent relied on the issuance of the Certificate by arranging her estate in a specific manner, arguing that the Decedent's reliance should satisfy the elements of estoppel. However, Petitioner provides no legal support why he, and not the Decedent's estate, is the proper party to invoke estoppel against PEHP based on the Decedent's reliance.

CONCLUSION

¶ 19 No life insurance contract existed between the Decedent and PEHP. The Decedent was not eligible for the type of policy the Certificate purports to represent and no premiums were ever paid on the alleged policy. Petitioner cannot invoke estoppel against PEHP because he failed to meet the demanding burden of proof placed on parties seeking to assert estoppel against governmental agencies. Finally, the Board followed the statutory procedures in dealing with Petitioner's case, and did not deprive him of due process.

¶ 20 For the foregoing reasons, we affirm the Board's decision.

¶ 21 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.