Damon HUGOE; Debbie Hugoe; and Hugoe Trucking, Inc., a Utah corporation, Plaintiffs and Appellees,

v.

WOODS CROSS CITY, a municipal corporation and political subdivision of the State of Utah, Defendant and Appellant.

No. 981502–CA.

Court of Appeals of Utah.

Oct. 7, 1999.

Michael Z. Hayes, Todd J. Godfrey, and Lisa G. Romney, Mazuran & Hayes, P.C., Salt Lake City, for Appellant.

Gregory M. Simonsen and Merrill F. Nelson, Kirton & McConkie, Salt Lake City, for Appellees.

Before Judges BENCH, BILLINGS, and DAVIS.

## OPINION

BENCH, Judge:

¶ 1 Appellant Woods Cross City (the city) asserts that the trial court erred in determining that appellees' use of their property for parking, staging, and storing trucks used in their business is a valid nonconforming use. The city also argues that the trial court erred in applying the doctrine of zoning estoppel and determining that the city was estopped from enforcing its current zoning regulations against appellees. We affirm.

## BACKGROUND

¶ 2 Appellees Damon and Debbie Hugoe own and operate Hugoe Trucking, Inc., which engages in interstate transport and local hauling of sand and gravel products. Appellees purchased the parcel of property at issue here in June 1991 for the purpose of parking, staging, and storing the large trucks and trailers used in their trucking business. In 1988, the property and several other adjacent parcels had been annexed from Davis County into Woods Cross City and zoned C–2. After annexation and zoning, the appellees' predecessor, and later the appellees, continued to use the property for parking large trucks and trailers without any objection from city officials.

¶ 3 Prior to purchasing the property, Mrs. Hugoe went to the city offices to inquire about the zoning of the property, and to assure that the proposed use was permissible. Tim Stephens, the Woods Cross City Community Development Director, gave her a copy of the relevant C–2 zoning ordinance. Appellees subsequently purchased the property and began hauling fill material onto the property in order to improve its use as a parking, staging, and storage area for their

large trucks. While obtaining a fill permit, Mrs. Hugoe again spoke with Tim Stephens. In the course of completing the permit application, Mrs. Hugoe inquired again as to the legality of appellees' intended use of the property, i.e., parking, staging, and storing trucks and trailers. Mr. Stephens replied that such use was permissible under the zoning ordinance. Appellees obtained the fill permit, finished filling the property, and used it without any objection from the city until March 1992.

¶ 4 In 1992, the city council adopted a new zoning ordinance, changing the zoning of appellees' property from C–2 (commercial) to I–1 (light industrial). Shortly thereafter, appellees received a letter from the city informing them that their use of the property was in violation of the new I–1 zoning, and giving them less than one month to cease that use. This letter was the first notice to appellees of the zoning change and of any objection to their manner of use of the property. Appellees immediately called Mr. Stephens and inquired as to what they might do to remedy the situation. They were informed that under the new zoning, large trucks could only be parked on the property if they were parked inside a garage. Because covered parking of the size necessary to comply was cost prohibitive, appellees continued to use the property as they always had.

¶ 5 Several subsequent demands to cease and desist were made, and in August 1995, the city served a criminal information on appellees, charging them with violating the new I–1 zoning ordinance. Appellees responded by filing the instant action seeking declaratory relief and an injunction against enforcement of the new zoning regulation. Following a bench trial, the court ruled in favor of appellees. The trial court held that appellees' use of their property is a valid nonconforming use that must be allowed to continue under the new zoning regulations, and that zoning estoppel precludes the city from enforcing its new zoning law against appellees. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 6 The first issue presented is whether the trial court erred in determining that appellees' use of the property is a legal nonconforming use. The second issue is whether the trial court erred in applying the doctrine of zoning estoppel to find that the city was estopped from enforcing the new zoning regulation against appellees. Both issues present questions of law, which we review for correctness. *See, e.g., Town of Alta v. Ben Hame*, 836 P.2d 797, 800 (Utah Ct.App.1992).

## ANALYSIS

¶ 7 The city contends that the trial court erred in determining that appellees' use of the property is a valid nonconforming use.

Nonconforming use means a use of land that: (i) legally existed before its current zoning designation; (ii) has been maintained continuously since the time the zoning regulation governing the land changed; and (iii) because of subsequent zoning changes, does not conform with the zoning regulations that now govern the land.

Utah Code Ann. § 10–9–103(1)(*l*) (Supp. 1999). The city makes no argument concerning the second and third elements of this definition of nonconforming use. The city only addresses the first element, arguing that appellees' use of the property was never "legally established," and therefore cannot be a legal nonconforming use. We disagree.

¶ 8 Appellees purchased the property at a time when it was zoned C–2. The relevant Woods Cross City C–2 ordinance included "transfer company" within its list of forty-nine permitted uses. Although transfer company is not defined in the ordinance, it is typically held to include "any company in the business of transporting freight or. other products for hire." *Armco Steel v. City of Kansas City*, 883 S.W.2d 3, 6 (Mo.1994). Moreover, "because zoning ordinances are in derogation of a property owner's common-law right to unrestricted use of his or her property, provisions therein restricting property uses should be strictly construed . . . in favor of the property owner." *Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 606 (Utah Ct.App.1995). The trial court thus correctly determined that "Hugoe

Trucking is a 'transfer company' within the meaning of [the city's] prior zoning ordinance." Hence, because transfer company is a permitted use under the former C–2 ordinance, appellees' use of the property "legally existed before its current zoning designation." Utah Code Ann. § 10–9–103(1)(*l*)(i) (Supp.1999). Accordingly, appellees' use of the property meets the definition of nonconforming use, and the change from C–2 to I–1 does not affect their right to continue using the property just as they had before the zoning change.

■ ¶ 9 The city argues that even if appellees operate a transfer company, the business activities are conducted in an office (located two lots away from the instant property) in West Bountiful City. The city urges that since the subject property is used merely for storage and parking, it is not being used in transfer company activities. We reject this argument. The use of the property for parking, storage, and staging activities is an integral part in the operation of a transfer company. *See, e.g., Gibbons & Reed Co. v. North Salt Lake City*, 19 Utah 2d 329, 336, 431 P.2d 559, 564 (1967) (stating parcel used to store gravel removed from another parcel "was an integral part of the gravel operation prior to and after [the zoning change]"). The property therefore was being used by a transfer company in the course of core transfer company activities before the zoning change. Hence, appellees are entitled to continue such use under the new ordinance as a valid nonconforming use. *See* Utah Code Ann. § 10–9–103(1)(*l*) (Supp. 1999).

■ ¶ 10 The city also contends that appellees' use of the property is not legally established because appellees failed to file a

site plan. The trial court determined that a site plan "was [not] needed to be legal." We agree. The city has failed to demonstrate—by way of statute, ordinance, case law, or other authority—how failure to file a site plan can defeat or invalidate an otherwise legal nonconforming use. Accordingly, we reject the city's contention that the absence of a site plan defeats appellees' nonconforming use rights. *See* Utah R.App. P. 24(a)(9) (providing that argument in brief shall contain citations to authorities and statutes); *see also Walker v. U.S. Gen., Inc.*, 916 P.2d 903, 908 (Utah 1996) (declining to address issue when appellant failed to cite to "a single case in support of this contention").

¶ 11 In view of our resolution of the nonconforming use issue, we need not address the city's second argument regarding the applicability of zoning estoppel to preclude the city from enforcing the new I–1 zoning regulations against appellees.

## CONCLUSION

¶ 12 Appellees' use of the property is a legal nonconforming use, entitling them to continue to use the property in the same manner as they did before the zoning change. Accordingly, we affirm the decision of the trial court.

¶ 13 WE CONCUR: JUDITH M.
BILLINGS, Judge, and JAMES Z. DAVIS, Judge.