2001 UT App 355

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael Dean COONCE, Defendant and Appellant.**

**No. 990803–CA.**

Court of Appeals of Utah.

Nov. 23, 2001.

534

Candice A. Johnson, Brown, Bradshaw, Anderson & Moffat, and Sharon L. Preston, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Defendant Michael Dean Coonce appeals his conviction for Homicide, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (Supp.1998). Defendant challenges the trial court's interpretation of Utah Code Ann. § 76–5–205(1)(c) (1995)[1] (the Manslaughter Statute) and the sufficiency of

the evidence supporting his conviction. Defendant also challenges his conviction on the basis of ineffective assistance of counsel. We affirm.

## FACTS

¶ 2 Defendant lived with his sister, Cammy Coonce (Sister), and her boyfriend (Victim). Defendant and Victim previously had conflicts with one another. On May 4, 1998, Sister involved herself in a conflict between Defendant and one of Sister's neighbors. Victim "entered the situation in the role of a peacemaker between" the three disputants, and eventually "grabbed [Sister] . . . and took her back upstairs," shouting at her as they climbed the stairs. Defendant followed Sister and Victim. When he reached the top of the stairs, Defendant, with his hand on a gun in his waistband, "said something to the effect of, 'Don't talk to my sister that way.' [Victim] replied, 'What are you going to do, shoot me?' This statement was . . . passive," made with his palms held outward near his sides and accompanied by a shrug. Defendant then shot Victim seven times.

## ANALYSIS

■ ¶ 3 We first address Defendant's challenge to the sufficiency of the evidence. " 'When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence. . . .' " *State v. Larsen*, 2000 UT App 106, ¶ 10, 999 P.2d 1252 (quoting *Spanish Fork City v. Bryan*, 1999 UT App 061, ¶ 5, 975 P.2d 501).

¶ 4 The State urges us "to decline to review defendant's insufficient evidence claims because he failed to marshal the evidence." *Id.* at ¶ 11, 975 P.2d 501. Defendant failed to marshal either the statements or the inferences that flow from the testimony of three witnesses who could see Victim at least partially just before he was shot. These state-

1. Defendant also purports to challenge the trial court's interpretation of Utah Code Ann. § 76–2–402 (1995) (the Self Defense Statute). He asserts that a discussion between the trial court and defense counsel on the issue of intent constitutes the court's rationale for concluding that Defendant was not legally justified in shooting the victim. However, Defendant supported this ar-

gument with only carefully selected portions of the record. Our own review of the record as a whole reveals that Defendant's assertion is without merit and that the trial court's discussion of intent is unrelated to the basis for its conclusion on self-defense. Accordingly, we decline to address Defendant's argument regarding the trial court's interpretation of the Self Defense Statute.

ments include the responses of Lacy Warner and Sister when asked something to the effect of, "Just before the first shot was fired, did you see the victim move?" Lacy Warner replied, "I just heard him saying shoot me." Sister, who had the clearest view of Defendant, replied, "Not that I remember, no." Also, when asked, "Just before you saw [the shooting], can you tell me what you saw [Victim] doing?" Davi Snelson replied, "He was just standing behind [Sister]." Inferences flowing from these statements, viewed in the light most favorable to the verdict, *see State v. Silva*, 2000 UT App 292, ¶ 25, 13 P.3d 604, suggest that Victim did not charge Defendant prior to the shooting, as Defendant asserts.

■ ¶ 5 Further, Defendant notes in his reply brief that he marshaled "most" of the evidence, but admits that he "did not include" the following: (1) Victim's palm-up hand gesture and shrug; (2) Defendant shot Victim seven times; (3) Defendant continued shooting Victim even after he was on the ground and probably dead; and (4) Defendant fled from the scene of the crime.[2] Moreover, Defendant failed to marshal any of the inferences created by the evidence, stating in his reply brief that he "knows of [no rule that] requires [Defendant] to not only Marshall [sic] the evidence, but also to argue all the inferences which would support the verdict."

■ ¶ 6 However, Defendant " 'must marshal *all* of the evidence in support of the trial court's findings of fact and then demon-strate that the evidence, *including all reasonable inferences* drawn therefrom, is insufficient to support the findings against an attack.' " *Larsen*, 2000 UT App 106 at ¶ 11, 999 P.2d 1252 (emphasis added) (citation omitted). This heavy burden places a responsibility on counsel that

> is not unlike becoming the devil's advocate. Counsel must extricate himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which supports the very findings the appellant resists.

*West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991). We conclude that Defendant failed to meet this burden. Thus, we decline to further address Defendant's challenge to the sufficiency of the evidence.[3]

■ ¶ 7 We next consider Defendant's challenge to the trial court's interpretation of the Manslaughter Statute. Defendant failed to preserve this issue for appeal. We

> may address an issue for the first time on appeal if appellant establishes that the trial court committed "plain error," if there are "exceptional circumstances," or in some situations, if a claim of ineffective assistance of counsel is raised on appeal even though, by reason of the claimed ineffectiveness, the matter was not raised below.

---

**2.** Defendant contends his failure to marshal evidence of his flight from the scene and any inference arising therefrom is excused because such evidence cannot support a verdict of guilty. However, "[w]hile a defendant's flight from a crime scene, standing alone, 'does not support an inference of intentional conduct,' the circumstances of a defendant's flight, in addition to other circumstantial evidence, may be adequate to support such an inference." *State v. Holgate*, 2000 UT 74, ¶ 23, 10 P.3d 346 (quoting *State v. James*, 819 P.2d 781, 790 (Utah 1991) (citation and footnote omitted)). Further, such evidence may " 'be considered with other factors as tending to show a consciousness of guilt and therefore guilt itself.' " *Id.* at n. 6. (quoting *Wharton's Criminal Evidence* § 214, at 450 (Charles E. Torcia ed., 13th ed.1972)).

**3.** Even if Defendant had marshaled the evidence properly, the trial court's findings regarding the shooting were not " 'against the clear weight of the evidence.' " *Larsen*, 2000 UT App 106 at ¶ 10, 999 P.2d 1252. Defendant makes much of the medical examiner's testimony that the first shot was fired from a range of "very nearly contact" to show Victim rushed toward him. However, "very nearly contact" was never defined, and Defendant's arm was outstretched toward Victim. Further, the physical evidence, as counsel on appeal conceded, could be interpreted as evidence that Defendant moved toward Victim prior to shooting him. Viewed in the light most favorable to the verdict, we may infer from this and other evidence that Victim did not rush toward or provoke Defendant to a reasonable belief that shooting him seven times was necessary.

*State v. Irwin*, 924 P.2d 5, 7 (Utah Ct.App. 1996) (citations omitted).

■ ¶ 8 "In order to obtain appellate relief through the doctrine of 'plain error,' an appellant must establish that '(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful.' If appellant fails to prove one of these requirements, plain error is not established." *Id.* (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)). Defendant asserts the trial court harmfully and obviously erred when it interpreted the Manslaughter Statute as requiring an *objectively reasonable* belief that lethal force was necessary instead of an *actual* belief only, however unreasonable.[4] Defendant contends the trial court's interpretation "is not what the Utah legislature intended, because it would render the [statute] meaningless, and in direct contradiction to the statute's express purpose, which is to provide mitigation to murder where an actor acts in something akin to self-defense, but is not legally justified."

■ ¶ 9 Further, Defendant suggests that there is little difference between the Manslaughter Statute and the Self Defense statute if reasonable belief is required. Then, citing how the imperfect self-defense doctrine is applied elsewhere, Defendant urges us to divine the legislature's intent notwithstanding the plain language of the Manslaughter Statute because it is " 'unreasonably confused[ or] inoperable.' " *State v. Bohne*, 2001 UT App 11, ¶ 7, 18 P.3d 514 (citations omitted).

"A fundamental rule of statutory construction is that statutes are to be construed according to their plain language. Only if the language of a statute is ambiguous do we resort to other modes of construction.

Furthermore, unambiguous language may not be interpreted to contradict its plain meaning. A corollary of this rule is that 'a statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute.' "

*Id.* (quoting *O'Keefe v. Utah State Retirement Bd.*, 956 P.2d 279, 281 (Utah 1998)).

■ ¶ 10 Although some jurisdictions permit imperfect self-defense to mitigate a homicide offense where the defendant had an actual, unreasonable belief that lethal force was necessary, other jurisdictions only allow such a mitigation when a defendant "reasonably believes it is necessary to kill the deceased in order to save himself from death or great bodily harm, but the defendant, without murderous intent, either was the aggressor or used excessive force." 40 Am.Jur. *Homicide* § 139 (1999) (footnote omitted); *accord id.* § 54. The defense of imperfect self-defense is thus sometimes allowed where the defendant *believes* reasonably but *acts* unreasonably, that is, beyond the scope of his or her reasonable belief. *See, e.g., State v. Irby*, 113 N.C.App. 427, 439 S.E.2d 226, 231 (1994) (imperfect self-defense available to aggressors without murderous intent or defendants who use excessive force); *see also* Christian C. Mahler, *Criminal Law: Limiting the Right to Imperfect Self Defense*, in *Survey: Developments in Maryland Law, 1992–93* 53 Md. L.Rev. 759, 762–63 (1994) ("One type of imperfect self-defense ... occurs when a defendant who nonfeloniously precipitates an attack is forced to kill in self-defense. Another type occurs when a defen-

---

4. The Manslaughter Statute reduces first-degree homicide to manslaughter only "where the actor *reasonably believes* the circumstances provide a legal justification or excuse for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances." Utah Code Ann. § 76–5–205(1)(c) (1995) (emphasis added). The legislature further emphasized that "the reasonable belief of the actor under [the Manslaughter Statute] shall be determined from the viewpoint of a reasonable person under the then existing circumstances." *Id.* § 76–5–205(3).

We note that the 1999 amendment to Utah Code Ann. § 76–5–205 (1995) deleted these former subsections, but almost identical language was added to Utah Code Ann. § 76–5–203(3) (1999). *Compare* Utah Code Ann. § 76–5–205 (1999), *with id.* § 76–5–203(3) *and* Utah Code Ann. § 76–5–205(1995). The language of Utah Code Ann. 76–5–203(3) (1999) was then renumbered. *See* Utah Code Ann. § 76–5–203(4) (Supp.2000).

dant kills as a result of employing unreasonable force in defending himself. Finally, some courts have recognized the defense when the defendant honestly, but unreasonably, believed that deadly force was necessary to prevent death or grievous bodily harm." (footnotes omitted)). Thus, a statute providing for "imperfect self-defense" may reasonably be interpreted as applying only to a defendant who "reasonably believes the circumstances provide a legal justification or excuse for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances." Utah Code Ann. § 76–5–205(1)(c) (1995). Accordingly, we reject Defendant's argument that the Manslaughter Statute is unreasonably confused or inoperable, and interpret the statute according to its plain language.

¶ 11 The plain language of the Manslaughter Statute unambiguously requires the defendant to *"reasonably believe* [ ] the circumstances provide a legal justification or excuse for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances." *Id.* (emphasis added). After finding that Victim's question, "What are you going to do, shoot me?" was a passive comment and that there was "inadequate evidence of any provocation from the victim," the trial court concluded that "[t]here were no circumstances that could have caused the defendant to have a reasonable belief that there was legal justification or excuse for his conduct." Given the plain language of section 76–5–205, we cannot conclude the trial court committed plain error because it correctly interpreted the Manslaughter Statute to require that Defendant's belief be reasonable.

¶ 12 Defendant also argues he is entitled to relief because the issue was not preserved due to ineffective assistance of counsel. "With respect to any ineffectiveness claim, a defendant must first demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable

professional judgment. Second, the defendant must show that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland,* 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)) (internal citation omitted); *see also State v. Arguelles,* 921 P.2d 439, 441 (Utah 1996) ("Unless [Defendant] has demonstrated that he was prejudiced by his trial counsel's performance, we need not decide whether that performance was deficient.").

¶ 13 Defendant asserts that counsel's ineffectiveness "is apparent since [Defendant's] trial counsel agreed with [the] trial court's erroneous statements of law" regarding the Manslaughter Statute. In light of our conclusion that the trial court did not err, we cannot say that trial counsel's performance prejudiced Defendant. Thus, neither plain error nor ineffective assistance of trial counsel allow us to review further Defendant's challenge to the trial court's interpretation of the Manslaughter Statute.

¶ 14 Finally, Defendant challenges his conviction on the basis of ineffective assistance of counsel unrelated to the trial court's statutory interpretation of the Manslaughter Statute. He argues he received ineffective assistance of counsel because defense counsel: (1) advised him to waive his right to a jury trial; (2) elicited certain evidence Defendant considers prejudicial and otherwise inadmissible; and (3) chose not to impeach Sister "with the tape recording or testimony of the police officer."

¶ 15 Defendant alleges in his opening brief that he waived his right to a jury trial "on the advice of his attorney." However, nothing in the record supports his assertion. Indeed, the record indicates Defendant waived his right to a jury trial for reasons of his own.[5]

---

5. Defendant explained to the trial court that the reason [I wish to waive this right] is because I feel that the publicity that my case has received, I trust that my case should be in the mind of somebody with a high education and who does this on a daily basis and can differ between each person's statements to the Court on a higher level than eight average people that have never done this before.
Further, Defendant indicated that no one pressured or influenced him unduly to waive his right to a jury trial.

¶ 16 Moreover, even assuming Defendant acted on defense counsel's advice, Defendant cannot show that defense counsel's performance prejudiced him. The second prong of *Strickland* requires Defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Martinez*, 2001 UT 12, ¶ 17, 26 P.3d 203 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). Defendant only mentions the evidence favorable to his position and speculates that a jury could render a verdict favorable to him based on that evidence. Thus, Defendant has not demonstrated "that counsel's errors were so serious as to deprive [him] of a fair trial." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Accordingly, we reject his contention that his waiver of a jury trial constitutes ineffective assistance of counsel.

¶ 17 Defendant next contends defense counsel's assistance was ineffective because counsel elicited inadmissible testimony from him by questioning him about a prior assault conviction and by asking him about a previous occasion when he fired his gun at gang members. To meet his heavy burden of showing prejudice, Defendant only conjectures that "the trial court could have improperly inferred [Defendant's] guilt from" his assault conviction and previous gun use. Such theorization does not show "a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *State v. Martinez*, 2001 UT 12, ¶ 17, 26 P.3d 203 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). Thus, this argument also fails under the second prong of *Strickland*.[6]

¶ 18 Defendant finally claims counsel was ineffective because he failed to impeach Sister with her tape-recorded statements made to the police or with testimony of the police officer who took those statements. However, Defendant has provided no record evidence to support his argument.[7] Neither the contents of the tape-recording nor what Defendant alleges the police officer would have testified to are in the record. Defendant's "claims of ineffectiveness, therefore, become only speculation. On many occasions, this court has reiterated that proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993) (footnote omitted); *see also Arguelles*, 921 P.2d at 441 (stating speculative claims "cannot substitute for proof of prejudice"). Accordingly, Defendant's final ineffective assistance of counsel argument also fails.

## CONCLUSION

¶ 19 We do not address Defendant's sufficiency of the evidence claims because he failed to marshal the evidence properly. We do not fully address Defendant's challenge to the trial court's interpretation of the Manslaughter Statute because he failed to preserve the issue, and failed to show that the trial court committed plain error or that his failure to preserve the issue was a result of ineffective assistance of counsel. Finally, we conclude Defendant does not meet his burden on the remaining ineffective assistance claims. Accordingly, we affirm.

¶ 20 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.

¶ 21 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

---

6. We note also that Defendant fails to adequately address the "first prong of the *Strickland* standard[, which] requires that a defendant rebut the strong presumption that 'under the circumstances, the challenged action "might be considered sound trial strategy." ' " *Litherland*, 2000 UT 76 at ¶ 19, 12 P.3d 92 (quoting *Strickland*, 466 U.S. at 687–89, 104 S.Ct. at 2064–66). Thus, even if Defendant could show prejudice, his ineffective assistance claim would still fail.

7. Defendant noted in his initial brief that he believed the record to be "inadequate to properly permit determination of many aspects of his ineffective assistance . . . claim." Upon our rejection of his Rule 23B motion to remand for findings regarding this argument, Defendant "argues his claim based on the existing record."