2009 UT App 122

Alicia K. VIAL, Petitioner and Appellant,

v.

PROVO CITY, a Utah municipal corporation; and Provo City Board of Adjustment, Respondents and Appellees.

No. 20070663–CA.

Court of Appeals of Utah.

May 7, 2009.

Michael B. Miller, A. Richard Vial, and Alicia K. Vial, Salt Lake City, for Appellant.

David C. Dixon, Robert D. West, Camille S. Williams, and J. Brian Jones, Provo, for Appellees.

Before Judges THORNE, BILLINGS,[1] and ORME.

## OPINION

ORME, Judge:

¶ 1 Petitioner Alicia K. Vial seeks judicial review of the decision by the Provo City Board of Adjustment (the Board) concerning the allowable use of her home. Provo City zoning personnel determined that her home is a single-family dwelling and that the rental of her basement to tenants is an illegal use of the property. She appealed that determination to the Board, arguing that the use of the basement as a rental is a legal nonconforming use that was established as early as 1950 and has continued up until the present time. The Board denied her appeal. We disagree with some of its analysis but decline to disturb the Board's ultimate decision.

## BACKGROUND

¶ 2 After researching its history and reviewing related documents, Vial purchased her home in Provo, intending to rent out the home's basement apartment while she attended law school at Brigham Young University. Three days after her purchase, Vial received a zoning verification letter from Provo City classifying her home as a single-family dwelling and deeming the rental of her basement apartment an illegal use.

¶ 3 Vial filed a petition with the Board, appealing the City's determinations. At the Board's hearing on the matter, she offered evidence about the home generally and, in particular, about the historical use of the basement as rental property. That evidence showed that the home was built in 1949–50; that the original owners rented the basement to tenants; that the second and third owners also rented the basement to tenants; that at some point a separate kitchen was built in the basement; that over time both the basement and the rest of the home were enlarged and upgraded; that when the home was built, it was in an area zoned for agricultural use, which allowed two families to dwell in the home; and that since 1954, the area in which the home is located has been zoned for single-family dwellings only.

¶ 4 Residents of the neighborhood, adamant in their desire to keep renters out of the area, also provided testimony about the home's rental history. Their testimony tended to show that there were no renters in the basement apartment on a number of occasions, and sometimes for a significant period of time. One witness noted that "he was personally acquainted with the previous owner, Mrs. Edna Done, and ... he knew that there was not a contiguous period of time that the accessory apartment was being utilized." Another testified that when she had told Mrs. Done that she could lose nonconforming status by non-use, Mrs. Done had responded, "I don't care if I lose it or not." A third witness said that "from 1999 to [the] present, Mrs. Done definitely did not have renters in [the basement apartment] continuously."

¶ 5 Finally, the Board heard evidence suggesting that, over the years, while other homeowners in the neighborhood had not been permitted to maintain basement apartments, the three previous owners of Vial's home were so permitted. In fact, Provo City investigated the third owner's use of the basement as a rental property in 1983–84, presumably after a neighbor complained. A document from the City's case file on the matter includes the following entry:

MEMO, 10–26–83:

AN INSPECTION WAS MADE ON OC-TOBER 26, 1983, OF THE RESI-

---

1. Judge Billings, who retired on December 31, 2008, heard the arguments in this case prior to her retirement. She completed her work in resolving this appeal as a senior judge, pursuant to Utah Code section 78A–3–102 (2008) and rule 11–201(6) of the Utah Rules of Judicial Administration.

DENCE.... IT WAS VERIFIED AT THIS TIME THAT THIS RESIDENCE HAD BEEN MADE INTO TWO UNITS AND IS PRESENTLY BEING OCCUPIED BY TWO FAMILIES.

THIS PROPERTY IS OWNED BY MR. BYRON DONE. THE TENANT THAT VERIFIED THE COMPLAINT WAS MR. GARY BEAMAN. HE HAS LEASED THE HOME FROM MR. DONE AND HAS SUBLEASED TO ANOTHER COUPLE. MR. BEAMAN STATED THAT, TO HIS KNOWLEDGE, THIS RESIDENCE HAS HISTORICALLY BEEN RENTED AS TWO (2) UNITS. HE WAS INFORMED AT THIS TIME THAT, TOGETHER WITH THE OWNERS, THEY WOULD NEED TO VERIFY WITH OUR OFFICE THAT THIS WAS INDEED A LEGAL NONCONFORMING USE.

LETTER TO SALLY HARDING FROM JOHN HANSEN, JR.:

THIS LETTER RESPONDS TO YOUR LETTER OF OCTOBER 27, 1983, WITH REFERENCE TO THE COMPLAINT RECITED AND THE CLAIMED VIOLATION OF THE ZONING ORDINANCE. IT IS ODD TO ME THAT THIS SAME COMPLAINT IS FILED EVERY FOUR AND FIVE YEARS AND THAT WE NEED TO GO THROUGH THE SAME ROUTINE EACH TIME. DR. AND MRS. DONE CAN ESTABLISH THAT THE BASEMENT APARTMENT HAS BEEN CONTINUOUSLY OCCUPIED SINCE THE HOUSE WAS FIRST BUILT OVER 30 YEARS AGO. IN FACT AT FIRST THE BASEMENT WAS THE ONLY RESIDENCE FOR SOME TIME. LATER THE TOP RESIDENCE WAS ADDED AND IT TOO WAS OCCUPIED FROM THE DATE OF ITS CONSTRUCTION. FOR YOUR INFORMATION, DR. AND MRS. DONE HAVE OWNED THE HOUSE ... FOR OVER 15 YEARS [AND] HAVE CONTINUOUSLY HAD STUDENTS RENTING DURING THIS TIME.

I HAVE NOT REVIEWED THE HISTORY OF YOUR ZONING LAWS FOR THE NEIGHBORHOOD, BUT FEEL CONFIDENT THAT THE "GRANDFATHER" RIGHT TO HAVE THE BASEMENT APARTMENT OCCUPIED IS WELL ESTABLISHED. MAY I RECOMMEND THAT THE CITY ADOPT SOME METHOD OF RECORDING THE INFORMATION AND SPARE DR. AND MRS. DONE THE FRUSTRATION OF REPEATEDLY RESPONDING TO THE UNFOUNDED CLAIM.

INSPECTION 1: 83/10/26

LETTER 1: 83/10/27

COMP DATE: 84/6/29

STATUS: CLOSED

CONFORMED–NONCONFORMING

¶ 6 The parties dispute what the case file entry means. Vial asserts that the entry is evidence of the City's recognition, at least in 1983–84, of the third owners' "grandfathered" rights to rent out the basement apartment notwithstanding the home's classification as a single-family dwelling. The crux of her argument before the Board was—and on judicial review is—that she succeeded to those rights when she purchased the home and is entitled to continue the practice now. The City challenges that interpretation of the case file document. In its view, the document is ambiguous and thus resolves nothing. The City's position is that the rental of the basement was never really permissible under any zoning laws and that even if it was, such a use was abandoned before Vial purchased the home.

¶ 7 In its denial of Vial's appeal, the Board found that the use of the basement as a rental "can only be established back to 1961" and that, "although it may have been built legally having facilities for an accessory apartment, it could not be determined based on a preponderance of evidence that the use had continued." Vial sought district court review of the Board's denial of her appeal. The district court upheld the Board's disposition. Vial then appealed the district court's decision to this court, ably arguing her own case during oral argument as a third-year law student. *See* Utah R. Jud. Admin. 14–807.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 In appealing from the district court, Vial seeks further judicial review of the Board's decision. She argues that the Board's decision denying her the use of her basement as rental property is arbitrary, capricious, and illegal, and that the district court erred in upholding the decision.

> Since the district court's review of the Board's decision [is] limited to a review of the Board's record, [*see* Utah Code Ann. § 17–27a–801(8)(a)(i)–(ii) (Supp.2008),] we do not accord any particular deference to the district court's decision. Instead, we review the Board's decision as if the appeal had come directly from the agency. Thus, the standard for our review of the Board's decision is the same standard established in the Utah Code....

*Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 603 (Utah Ct.App.1995) (footnotes omitted).

¶ 9 Section 17–27a–801 of the Utah Code provides that any person "adversely affected by a final [local land use] decision ... may file a petition for review of the decision," Utah Code Ann. § 17–27a–801(2)(a), but in reviewing the decision, the courts are required to "determine only whether or not the decision ... is arbitrary, capricious, or illegal," *id.* § 17–27a–801(3)(a)(ii). We assume that the final decision of the Board is valid—i.e., not arbitrary or capricious—so long as it is "supported by substantial evidence." *Id.* § 17–27a–801(3)(c). *See also Patterson*, 893 P.2d at 604 ("[T]he Board's decision can only be considered arbitrary and capricious if *not* supported by substantial evidence.") (emphasis in original). " 'Substantial evidence' is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Patterson*, 893 P.2d at 604 n. 6 (citation and additional internal quotation marks omitted). "In determining whether substantial evidence supports the Board's decision we will consider all the evidence in the record, both favorable and contrary to the Board's decision." *Id.* at 604. In light of that evidence, we must determine "whether a reasonable mind could reach the same conclusion as the Board. It is not our pre-rogative to weigh the evidence anew." *Id.* "On the other hand, whether or not the Board's decision is illegal depends on a proper interpretation and application of the law. These are matters for our determination, and we accord no deference to ... the Board." *Id.* Likewise, whether a particular use constitutes a legal nonconforming use is a question of law, reviewed for correctness. *See Hugoe v. Woods Cross City*, 1999 UT App 281, ¶ 6, 988 P.2d 456.

¶ 10 Vial also argues that Provo City is estopped from denying her the use of her basement as rental property because, in her view, the City recognized the use as nonconforming but legal in 1983–84, as shown in the City's case file documents. This argument presents mixed questions of fact and law, which we review for clear error and correctness, respectively. *See Terry v. Retirement Bd.*, 2007 UT App 87, ¶ 8, 157 P.3d 362.

## ANALYSIS

### I. The Board's Decision

■ ¶ 11 "[A]ny person adversely affected by [a] land use authority's decision administering or interpreting a land use ordinance may ... appeal that decision to the [Board] by alleging that there is error in [the] order, requirement, decision, or determination made by the [Board] ... in the administration or interpretation of the land use ordinance." Utah Code Ann. § 10–9a–703(1) (2007). "The appellant has the burden of proving that the land use authority erred." *Id.* § 10–9a–705. Vial argues that the Board's decision affirming the City's classification of her property for single-family use only and denying her the use of her basement as rental property is arbitrary, capricious, and illegal. We disagree.

¶ 12 Title 14, chapter 36, of the Provo City Code governs nonconforming uses of property in Provo. *See* Provo, Utah, City Code tit. 14, ch. 36 (2008). For purposes of our analysis, three ordinances are relevant. The first relates to the burden of proof for establishing nonconforming status:

> (2) Burden of Proof. In all cases, the property owner shall have the burden of proving by a preponderance of evidence

that a lot, structure, use or other circumstance which does not conform to the provisions of this Title complied with applicable ordinance requirements in effect when the nonconforming circumstance was established.

(a) A preponderance of evidence is evidence which is more credible and convincing than evidence offered in opposition to it.

(b) Evidence offered to prove a lot, structure, use, or other circumstance was legally established may include, but is not limited to:

(i) The date when the circumstance was created;

(ii) Copies of applicable zoning, building, or other code provisions in effect at the time of creation;

. . .

. . . and

(v) Affidavits of persons with personal knowledge of the circumstances of creation.

*Id.* § 14.36.100.

¶ 13 The second relevant ordinance relates to the continuation of nonconforming uses: "A nonconforming use which was legally existing when such use became prohibited may be continued as provided in this section and by any other applicable provision of this Chapter, so long as it remains otherwise lawful, subject to applicable standards and limitations in this Chapter." *Id.* § 14.36.040(1).

¶ 14 The third ordinance relates to the abandonment of nonconforming uses:

(1) Presumption of Abandonment by Passage of Time. Any nonconforming structure or use which is not occupied or used for a continuous period of six (6) months shall be presumed abandoned and shall not thereafter be re-occupied or used except in a manner that conforms to the requirements of this Title unless the presumption of abandonment is overcome as provided in Subsection (3) of this Section.

(2) Presumption of Abandonment by Event. Independent of the six (6) month requirement set forth in Subsection (1) of this Section, a nonconforming structure or use shall be presumed abandoned when any of the following events occur:

(a) The owner has in writing or by public statement indicated intent to abandon the structure, use or other nonconformity[.]

. . . .

(3) Overcoming Presumption of Abandonment. A presumption of abandonment may be rebutted upon evidence presented by the owner showing no intent to abandon the structure or use. Such evidence may include proof that during the alleged period of abandonment the owner has done either of the following:

(a) Maintained the structure or use, if any, in accordance with the applicable codes; or

(b) Has actively and continuously attempted to sell or lease the property where the structure or use is located.

*Id.* § 14.36.090.

¶ 15 Contrary to the Board's determination, we conclude that Vial met her burden of proving, by a preponderance of the evidence, that the use of the basement as rental property complied with applicable ordinance requirements in effect when such use became nonconforming. There is no dispute that when the home was built, it was zoned as agricultural. Under the agricultural zoning designation, two families were permitted to live in the home legally. The parties also do not dispute that the original owners rented out the basement apartment. While it remains unclear whether the renters at that time were autonomous tenants or simply "boarders in sleeping rooms," the fact remains undisputed that the basement apartment was *used* to house renters from the time it was built in 1949–50 and for many years thereafter.

¶ 16 The City makes quite a fuss about when a separate kitchen was added in the basement. While that may be relevant to whether the *structure* was ever established as being legally nonconforming, we think that has little to do with whether the basement's *use* as a rental unit was legally established. The city ordinances provide for nonconforming uses, *see id.* § 14.36.040, nonconform-

structures, *see id.* § 14.36.050, nonconforming lots, *see id.* § 14.36.060, and other nonconformities, *see id.* §§ 14.36.070, 14.36.080. These are all different. Though we need not decide the issue in this case, the City may be correct that the presence of a kitchen in the basement apartment was never established as legally nonconforming. But given the evidence presented, it was clear error for the Board to have determined that the *use* of the basement as a rental "can only be established back to 1961."

¶ 17 From the time the home was first built, its basement was undisputedly rented out to tenants. Contrary to the City's claim of ambiguity, the City's 1983–84 case file further supports, quite strongly, Vial's position that the rental of the basement apartment was established as a legal nonconforming use and had so continued at least up until that time. While the case file document may be ambiguous in some minor respects, it is clear from its contents that someone—probably another resident in the community—complained about the basement apartment, the City investigated the circumstances, and the City obtained information suggesting that renters had occupied the basement continuously for at least fifteen years. The City's investigation was closed in late June 1984 without further action and with the notation, "CONFORMED–NONCONFORMING"—its investigator having apparently agreed with the letter quoted in the file characterizing any complaint of a zoning violation as "unfounded." It is clear from the record that the City recognized the rental of the basement apartment as a legal nonconforming use in 1983–84. Were it otherwise, the City would almost certainly have taken action to terminate the use, as it did with other property owners in the neighborhood.

¶ 18 The City contends that perhaps "nonconforming" means something other than "legally nonconforming" or that perhaps "conformed-nonconforming" is a typographical error actually intended to read as "confirmed-nonconforming," presumably meaning that the City confirmed that the use was nonconforming. Alternatively, the City speculates that perhaps the case file was closed because the 1983–84 owners of the home

stopped renting out the basement apartment and thereby came into compliance with the city ordinances. This all strikes us as little more than grasping at straws. Even in administrative proceedings where the rules of evidence are relaxed, *see, e.g.,* Utah Code Ann. § 63–46b–8(1)(c) (Supp.2008) (allowing hearsay as evidence in administrative proceedings), conjecture of this nature is unpersuasive, if not inadmissible, *see State v. Coonce,* 2001 UT App 355, ¶ 17, 36 P.3d 533 (rejecting defendant's arguments as "conjectures" and "theorization"). *See also* Utah Code Ann. § 63–46b–8(1)(b)(i) ("On his own motion or upon objection by a party, the presiding officer … may exclude evidence that is irrelevant [or] immaterial[.]"). And to the extent there is ambiguity in the case file document, it is well established that any ambiguity will be construed against the City. *Cf. Culbertson v. Board of County Comm'rs,* 2001 UT 108, ¶ 15, 44 P.3d 642 (stating that ambiguous orders are construed "against the prevailing parties who drafted" them).

¶ 19 Combined with the other evidence presented, and given its language and context, the City's case file document constitutes sufficient evidence to establish by a preponderance—and we cannot find in the record any evidence, substantial or otherwise, to the contrary—that the rental of the basement was a legal nonconforming use as of 1983–84. The Board therefore erred in determining otherwise. Unfortunately for Vial, however, our analysis does not end there.

■ ¶ 20 The City asserts that any legal nonconforming use was abandoned during the decades that followed the 1983–84 determination. Vial argues that the use of the basement apartment as a rental has never been abandoned and that the Board never really considered abandonment as a ground for its decision anyway. On this issue, we agree with the City: The Board considered substantial evidence that readily supports a theory of abandonment.

¶ 21 The use of the basement apartment as a rental is presumed to be abandoned if either it was discontinued for a period of six months, *see* Provo, Utah, City Code § 14.36.090(1) (2008), or the property owner "in writing or by public statement indicated

[an] intent to abandon the ... use." *Id.* § 14.36.090(2)(a). Substantial evidence exists in this case to support a presumption of abandonment under at least the first of these theories, if not the second as well.

¶ 22 DeAnn Gardner testified at the Board hearing that in 2001 she "knew the apartment had not been rented for six months." She also testified that in 2003, she

> knew as a neighbor that the apartment had not been rented for at least six months more than that time.... So [she] ... had a conversation with [the third owner, Mrs. Done,] and said, "you're going to lose this privilege," and [Mrs. Done] said, "well, I don't really care whether I lose it or not, it's nice, I enjoy the privacy of not having anyone there, I don't care, it gives me the opportunity to let my grandchildren come and stay there if they need a place to stay so it really doesn't matter to me."

Lisa Wygant, another neighbor, testified that Mrs. Done "definitely did not have renters continuously.... [S]ometimes [she was without renters] for long periods of time[.]" The testimony of these witnesses provides substantial evidence of abandonment.

¶ 23 Vial argues that the evidence she presented was sufficient to rebut the presumption of abandonment. A presumption of abandonment can be rebutted by evidence showing that the owner "[m]aintained the structure or use ... in accordance with the applicable codes; or ... [h]as actively and continually attempted to sell or lease the property[.]" *Id.* § 14.36.090(3). Vial presented evidence that Mrs. Done tried to rent out the basement apartment at various times when it was vacant. Jeanine Gunn, Mrs. Done's daughter, asserted by letter that her mother "did not intend to abandon legal use of the apartment."

¶ 24 The Board obviously considered all of this evidence. It included in its written decision references to testimony showing that "the use of the accessory apartment had been abandoned," that "there was not a contiguous period of time that the accessory apartment was being utilized," and that Mrs. Done "definitely did not have renters in [the basement apartment] continuously[.]" And during the hearing, the Board actively sought evidence "showing continued occupancy." But it ultimately concluded that "it could not be determined based on a preponderance of evidence that the use had continued.... [A]lthough [Vial] did provide [some evidence, it simply established an] occupancy history showing that there were renters from time to time."

¶ 25 "It is not our prerogative to weigh the evidence anew." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 604 (Utah Ct.App.1995). The scope of judicial review is limited, and we can only determine whether the Board's decision was legal and supported by substantial evidence. *See id.* It was, and we accordingly must refrain from disturbing it.

## II. Estoppel

¶ 26 Vial also argues that the City is estopped from denying her the use of her basement as rental property because of its having designated in its 1983–84 case file entry that the previous owners' rental of the basement was a legal nonconforming use. " 'As a general rule, estoppel may not be invoked against a government entity.' " *Terry v. Retirement Bd.,* 2007 UT App 87, ¶ 14, 157 P.3d 362 (quoting *Anderson v. Public Serv. Comm'n,* 839 P.2d 822, 827 (Utah 1992)). However, "Utah law provides a limited exception to this rule in 'unusual circumstances where it is plain that the interests of justice so require.' " *Id.* (citation omitted). "This exception applies only if the facts may be found with such certainty, and the injustice suffered is of sufficient gravity, to invoke the exception." *Id.* (citations and internal quotation marks omitted). Vial "failed to meet the high standard of proof necessary for applying equitable estoppel against the government," *id.* ¶ 15, because she failed to prove either the facts of her case with certainty or the existence of grave injustice, *see id.* ¶¶ 14–15 (recognizing petitioner's burden to prove both).

¶ 27 Even if the exception were to apply so as to permit consideration of the merits of Vial's estoppel claim, her argument would likely fail. Though Vial asserts that she relied on the City's 1983–84 case file

when she purchased her home, she concedes that she "did not have the specific document in mind when she closed on the house." She only determined that she had relied on the 1983–84 document "by process of elimination" after the fact. While her candor is refreshing, such a concession substantially undercuts any chance she might have had of prevailing on her estoppel claim because " 'reasonable action or inaction by the [claimant] taken *on the basis of the first party's statement* ' is one of three necessary elements Petitioner must prove to invoke estoppel," *id.* ¶ 16 (first alteration in original) (emphasis added) (citation omitted), and Vial's "process of elimination" construct falls short of establishing the factual certainty required by *Terry v. Retirement Bd.*, 2007 UT App 87, 157 P.3d 362, *see id.* ¶¶ 14–15.

¶ 28 Even without Vial's concession—i.e., even if she had clearly relied on the case file—her estoppel argument would likely fail on the merits. In Part I of this opinion we agreed that the case file document was sufficient to show that the rental of the basement was a legal nonconforming use in 1983–84. But Vial's unskeptical reliance on that document twenty-two years later—especially where she knew that the basement apartment's legality was an open question and that using the basement as a rental was controversial and would likely be challenged—was simply not reasonable. A purchaser of real estate, especially one as sophisticated as Vial, may not repose such complete trust in documentation of such vintage given the very real possibility that, in the decades that followed, the once-proper nonconforming use had been abandoned. *Cf. Home Sav. & Loan v. Aetna Cas. & Sur. Co.*, 817 P.2d 341, 379 (Utah Ct.App.1991) (Bench, J., dissenting) ("[A] sophisticated purchaser of insurance ... may [not] turn a blind eye to the obvious.").

1. The Board's decision, in its entirety, is as follows:

> The Board of Adjustment made a motion to deny [Vial's] appeal.
> Steve Sabins, motioned to deny the appeal, and adopt the findings of fact presented by staff as well as the contributions of the applicant to the packet of information in the staff report. Mr. Sabins, stated that "[Vial] did not

CONCLUSION

¶ 29 We agree that Vial proved, by a preponderance of the evidence, that the rental of her basement apartment was established as a legal nonconforming use from the time of its construction and throughout most of its history. However, substantial evidence exists to support the Board's conclusion that such a use was eventually abandoned. Additionally, Vial failed to establish the applicability of the exception allowing her to invoke estoppel against the government.

¶ 30 Affirmed.

¶ 31 I CONCUR: JUDITH M. BILLINGS, Judge.

THORNE, Associate Presiding Judge (concurring in part and dissenting in part):

¶ 32 I respectfully dissent. I agree with the majority's determination that the rental of the basement was a legal nonconforming use as of 1983–84. I disagree, however, with the majority's determination that because the Board considered substantial evidence that readily supports a theory of abandonment that the Board necessarily concluded that the legal nonconforming use had been abandoned. I further disagree with the majority that the Board actually concluded that any legal nonconforming use of the basement apartment was abandoned.

¶ 33 I agree with the majority that the Board considered and discussed evidence supporting a theory of abandonment, portions of which the Board noted in its written decision. However, the Board's consideration and discussion of abandonment evidence is not tantamount to a decision that any legal nonconforming use of the basement apartment was actually abandoned. On the contrary, the Board's decision does not provide abandonment as a basis for its denial of Vial's appeal.[1] Instead, the Board's decision

> have an adequate amount of information for the board to overturn the staff's decision," and that "long-term neighborhood residents also gave compelling testimony contrary to some of [Vial's] statements and information."
> The motion was seconded by Leonard Mackay, and the voting was unanimous to deny [Vial's] appeal. [Vial] was informed that she had 30 days from the date of this meeting in

adopted the findings of fact reached by the staff as found in the staff report. The staff report contained evidence primarily pertaining to the legal nonconforming use of the property and requested the Board deny Vial's appeal based on the staff's conclusion that "[Vial] has not provided evidence or established circumstances for determining a nonconforming use of a One–Family Dwelling with an Accessory Apartment."

¶ 34 Despite the substantial evidence on abandonment, I believe it is unwise to infer a finding of abandonment simply because evidence of such was taken and discussed while the decision purports to rely on a different basis for its denial of the appeal. Because the Board's decision did not expressly provide abandonment as a basis for its denial of Vial's appeal, I cannot agree with the majority that the Board found that any legal nonconforming use of the basement apartment had been abandoned.

¶ 35 Additionally, I disagree with the majority's determination that any reliance Vial may have had on the 1983–84 case file determination was simply not reasonable because she was a sophisticated purchaser who had knowledge about the controversy surrounding the nonconforming use of the apartment. I also disagree with the majority's determination that the legality of the basement apartment remained an open question at the time of the home purchase further rendered her reliance unreasonable. First, I disagree with the majority's characterization of Vial as a sophisticated purchaser of real estate because she was a law student. I am not inclined to label an individual, with no articulable real estate experience, purchasing a home for the first time as a sophisticated purchaser. Second, the "open question" analysis, as posed by the majority, relates to the fact that Vial's realtor requested zone

verification prior to closing, thereby indicating that an open question existed regarding the basement apartment's legality. I disagree; the realtor's request is irrelevant to demonstrate that an open question existed to render Vial's reliance on the 1983–84 determination unreasonable. This conclusion disregards the evidence that demonstrates neither Vial nor her father, Richard Vial, knew prior to closing that the realtor had requested zone verification.[2] Without evidence of Vial's knowledge of a pending zone verification determination, it is improper to conclude that Vial knew that the legality of the basement apartment was an open question. The majority also suggests that Vial's knowledge that using the basement as a rental would cause an upset with the neighbors, who might attempt to legally prevent such use, demonstrates that the apartment's legality was an open question. Vial's knowledge of the controversy surrounding the apartment is not the same as having knowledge that the legality of the apartment was an open question. As a result, without more, I respectfully disagree that Vial's reliance was not reasonable.

which to appeal this decision to the district court.

2. The zone verification letter was sent to Vial's realtor, John Wallace, not Vial or her father. Vial, upon being made aware of the zone verification determination by her realtor, sent a letter on May 3, 2006, to the Office of Community Development requesting appeal information and explaining,

We closed on the home on April 21, 2006. During the process of looking at the home, we

discussed with the realtor the basement apartment. What we did not realize was the realtor, John Wallace, had requested of your department a Zone Verification Determination. Apparently, the Zone Verification Determination was issued on April 24th, some three (3) days after our purchase. Although I am not sure of when Mr. Wallace received it, we were made aware of it on the 26th of April....